## HARVEY AND WIFE vs. THORPE.

[WRIT OF RIGHT FOR RECOVERY OF LAND.]

1. *Judicial admissions of attorney, conclusiveness of.*—Conceding that attorneys-at-law have power to bind their clients by written admissions as to the facts of a case ; yet, where such admissions are made improvidently, or through mistake, the court may relieve against them, by means of its coercive powers over its own officers, and may set them aside upon such terms as will meet the justice of the particular case.

2. *Secondary evidence, different degrees of.*—The rule established by the current of American authorities, which requires a party to produce the best kind of secondary evidence that is in his power, is more reasonable than the English rule, which recognizes no degrees in secondary evidence ; but wherever this rule is invoked against a party, he is permitted to show that what appears to be, is not in fact, a higher degree of secondary evidence.

3. *Record copy of deed, conclusiveness of.*—A record copy of a lost deed, or a transcript from the record, which is declared by the statute (Clay's Dig. 155, § 25) to be "as good and effectual and available in law as if the original deed were then and there produced and proved", is only *prima facie* evidence of the contents of the deed, on the ground that all public officers must be presumed to have discharged the duties which the law requires of them ; but parol evidence is admissible to show that it was not correctly recorded.

4. *Presumption of conveyance from long-continued possession.*—Where defendant shows a letter from plaintiff's ancestor to an agent, directing him to close a bargain for the sale of the land, a deed thereupon executed by the agent, in his own name, to defendant's vendor, and an uninterrupted possession of twenty-eight years; the court may instruct the jury, that they may presume a conveyance from plaintiff's ancestor, either to the agent, or to his vendee.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

This action was brought by the appellants, Caroline Cald-well, Alexander Harvey and Matilda, his wife, as heirs-at-law of Sebastian Shade, against Andrew Thorpe and Charles Thorpe, " to recover a parcel of land in the city of Mobile, situate to the south of Dauphin street, and bounded thereon, and measuring fifty feet, bounded on the west by the property of George Davis, and extending with the same width one hundred feet"; and was commenced on the 27th October, 1845. The defendants pleaded, in short by consent, the general issue, and the statutes of limitation of ten, twenty, and thirty years.

The trial was had at the May term, 1854; and the bill of exceptions then sealed, at the instance of the plaintiffs, presents all the matters covered by the assignments of error.

The plaintiffs rested their case, after having offered in evidence an agreement, which had been entered into between the attorneys of the respective parties, and which was as follows :

" Harvey & Wife, et al.,⎫ It is admitted in evidence, on
      vs.   ⎬ the trial of this cause, that Se-
Thorpe & Thorpe.   ⎭ bastian Shade owned in fee simple, and was in possession of, the land sued for in this case, until the 20th day of August, 1818; that, on that day, the defendants, and those under whom they claim, went into possession, and have held the same adversely, ever since that time, under claim of title, to this time; that said Shade was the ancestor of the plaintiffs, and that they are his only heirs; that said Shade died, in the State of Alabama, in the year 1820; that plaintiffs were minors at the death of said Shade. It is further admitted, that said heirs married before the termination of their minority; and that the records in the office of the county, of any papers having reference to this cause, may be read in evidence, without objection to the non-production of the originals."

               (signed)     " STANLEY, for Pl'ffs."
                         " LOCKWOOD, for Def'ts."
" The defendants then proposed to give evidence tending

to show that the plaintiffs had no title to the premises sued for; to which the plaintiffs objected, on the ground that they were concluded by said agreement. The defendants then examined Mr. Lockwood, before the court, who testified, that he, as defendants' attorney, entered into said agreement; that it bore his signature, a part of the body of it was in his hand-writing, and the other part in Mr. Stanley's; that he, how-ever, had no recollection whatever of the agreement; that, when he entered into it, and until recently, he supposed the plaintiffs were suing for their right lot; that he now believed they were mistaken in that supposition, and, had he known as much when he entered into the agreement, he would not have entered into it. Mr. Lockwood said, also, that he had signed said agreement under an entire misapprehension of the facts as to the titles to the lots, and without consultation with the defendants. Defendants proved, also, that they had given notice to the plaintiffs, several days before the trial, as soon as the error was ascertained, that they would not abide by said agreement as to the right of plaintiffs to the lot in 1818; and produced another (and subsequent) agreement, re-lating to said cause, as also to the case when it was in chan-cery, of which the following is a copy :

'Caldwell & others vs. Thorpe, In the Circuit Court.

'Thorpe vs. Caldwell & al., In Chancery.

'In these cases it is agreed, that the records, or the copies from the records, of the circuit or county court, or of the register's office, of the county of Mobile, which either party may wish to use on the trial of said causes, or either of them, may be used in evidence without further proof.'

March 21, '50. (signed) W. C. STANLEY.

'LOCKWOOD & HITCHCOCK, for Thorpe.'

" On the day before the trial, this cause being called, the defendants called the attention of the court to the agreement just above exhibited, and the mistake under which it was en-tered into; and desired to know, before venturing to trial, whether the court would compel them to abide by the agree-ment. The court refused to give any opinion, but informed the counsel that he was supposed to know the effect of his agreement, and that the cause must go on to trial. On the trial of the cause, the agreement was read to the jury, subject

to the charge of the court as to its effect, after the evidence was through; the court announcing that, if it should appear that the defendants' counsel entered into the agreement through mistake, and that the plaintiffs' ancestor never was in fact in possession of or owned said lot, he should charge the jury, that the defendants were not bound by the agreement. In Mr. Lockwood's examination as to this agreement, he also said, that he always supposed the lot in controversy was the proper lot called for in the plaintiffs' deed, until the mistake (or supposed mistake) in the copy of the deed to Chamberlain, Smoot and Slade was called to his attention, some short time before the trial now had. The court ruled, that the defendants were not concluded by said first agreement, but that he would hold it good until rebutted, and would allow the defendants to show that the plaintiffs had no title to the premises sued for; to which ruling the plaintiffs excepted.

" It was admitted, that the title to three hundred feet on the south side of Dauphin street in Mobile, beginning on the west at the corner of Royal street, and running east on Dauphin street three hundred feet, and running back south —— feet, was in Forbes & Co.; and defendants gave in evidence a record copy of a deed from Forbes & Co. to Wm. H. Robertson, and a record copy of a deed from said Robertson to plaintiffs' ancestor", which are appended as exhibits to the bill of exceptions. The deed of Forbes & Co. to Robertson was dated October 28, 1817, and conveyed lots Nos. 7, 8, and 9, in square No. 1, lying south of Dauphin street, and having a front of twenty-five feet each; and the deed of Robertson to Sebastian Shade, dated January 24, 1818, conveyed said lot No. 9, describing it as follows: " All that piece or parcel of land, situated in the town of Mobile aforesaid, and butted and bounded as follows : lying on the south side of Dauphin street, namely, one lot or parcel of land, being lot No. 9, of square No. 1, of lots and lands sold by James Innerarity, John Forbes and John Innerarity to W. H. Robertson, lying as aforesaid, and butting and bounding on the south side of Dauphin street for the length of twenty-five English feet, on the west southwardly bounded by a lot sold by James Innerarity, John Forbes and John Innerarity to

Col. B. S. Smoot and others, on the south eastwardly by a lot belonging to Col. Louis Judson, and on the east northwardly by lot No. 8 of the said square."

The defendants then offered in evidence a letter from Sebastian Shade to John W. Simonton, and a record copy of a deed from said Simonton to Thomas Shields. The letter from said Shade to Simonton, dated August 20, 1818, was as follows : " Dear Sir : I received your letter of the 17th, containing the proposition of Mr. Shields, which I will accept, provided we understand each other perfectly. The manner the house is to be finished, which you say is agreeable to the original contract, with the following exceptions," &c. " The whole will be finished by me in as short a time as possible. The payments will answer; and if no objection is made (to) the manner I understand the house is to be finished, you will please to close the bargain. I will be in town shortly, and will comply with any agreement pointed out in your letter. Your agreement with Mr. Shields will be conclusive and binding on me. Any trouble you may be at, will be thankfully paid, by your friend," &c. The deed of Simonton to Shields purported to be executed by Simonton as agent of Sebastian Shade, and conveyed to Shields said lot No. 9, describing it as follows : " All that lot or parcel of land, situate, lying and being in the town of Mobile, on the south side of Dauphin street, containing twenty-five feet front on said street, and running back southwardly sixty-one feet, bounded on the north by Dauphin street, east by the lands of James Innerarity, on the west by Smoot and Chamberlain, and on the south by Louis Judson."

The plaintiffs objected to this letter and deed, " on the ground that the letter was no authority to Simonton to convey; but the court overruled the objection, and permitted the evidence to be read,—not as a conveyance, but merely as color of title to show the *bona fides* of the possession had under it; and plaintiffs excepted."

The defendants then offered record copies of a deed from Shields to Batre & Chighizola, for said lots Nos. 7, 8, and 9, dated January 27, 1821; a partition deed between said Batre and Chighizola, by which lot No. 7 was assigned to said Batre, and lots Nos. 8 and 9 to said Chighizola; a deed from

said Batre to Jotham Clark, dated February 15, 1834, conveying said lot No. 7; and a sheriff's deed, dated April 6, 1840, conveying said Clark's interest in said lot to the defendant, Andrew Thorpe. "To each of these deeds, as offered, the plaintiffs objected, because they were the written assertions of strangers, by which plaintiffs were not bound; and because, secondly, they are subsequent to the date of plaintiffs' title. The court overruled the several objections, and permitted the evidence to go to the jury; and plaintiffs excepted." The defendants then offered the record of the judgment against said Jotham Clark, under which said lot was sold by the sheriff. The plaintiffs objected to it on the same grounds; but the court overruled their objection, and they excepted.

The defendants then offered in evidence the deposition of said Simonton, and the plaintiffs raised several objections to it, which, however, it is unnecessary to notice, as the deposition is nowhere copied in the record. They then offered the deposition of H. V. Chamberlain, and the certified copy of a deed appended thereto as an exhibit. Said Chamberlain testified as follows: "Witness, Henry B. Slade and Benj. S. Smoot bought a lot on the south-east corner of Royal and Dauphin streets, at an auction sale by John Forbes & Co. This was in the year 1817, as per copy of deed hereto appended, marked 'A.' My recollection is, that we fronted on Dauphin street one hundred feet. I cannot say whether Robertson bought the east, or not; but he claimed said lot, and built thereon, as the agent of Thomas Shields, as I believe. The south boundary line of the lot was a little less than the front line, in consequence of the way the streets ran. The first lot described in said deed, marked 'A', I think is correctly described therein. In the second lot described in said deed, there has been a mistake made in copying the deed: it should be *twenty-five* feet front on Dauphin street, instead of *seventy-five* feet. The deed hereto annexed, marked 'B,' is, I think, a true copy of the partition deed between the parties therein named; and the property described therein is all the property on Dauphin street purchased by witness, Slade and Smoot at said auction sale. [*Cross-examined.*] I cannot say, from my recollection, whether the property men-

tioned as lying on the south-east corner of Dauphin and Royal streets, was all offered for sale at one time, or in separate parcels. I cannot recollect how it happened that there were two descriptions in the deed, instead of one. I cannot tell, without a reference to the deed, which of the two lots, one of seventy-five feet, and the other of twenty-five feet, lies farthest easterly. According to the best of my recollection, Addin Lewis had seventy-five feet appropriated to him on Dauphin street; the share appropriated to Toulmin lay between the land owned by witness and Addin Lewis; witness' lay at the corner of Royal and Dauphin, and there was some twenty-four or twenty-five feet on Dauphin. The land was divided, I think, by agreement between the parties. I do not remember who were the witnesses to the partition deed, or when the partition was made, or who witnessed the deed from Forbes & Co., or when the said auction sale took place. [*Re-examined.*] The facts are, to the best of my recollection, correctly stated in the partition deed. At the time this partition was made, I had an agreement with Toulmin for my interest in said lot. My recollection of which lot fell to me is imperfect, and I must refer to the deed for positive information as to how much fell to each party. I never, to my recollection, compared the original deeds, of which copies are hereto annexed, with the record book of Mobile county."

The deed from Forbes & Co. to Chamberlain, Smoot and Slade, as appended to the deposition of this witness, is dated October 25, 1817, and conveys the following lands: "One lot, with some old buildings thereon, forming the south-east corner of Royal and Dauphin streets, butting and bounding northwardly on Dauphin street, seventy-five feet, English measure; southwardly on a lot belonging to Louis Judson, sixty-nine feet, or thereabouts; and eastwardly on the lot next mentioned, sixty-seven feet, more or less. One other lot, butting and bounding northwardly on Dauphin street, *seventy-five* feet; westwardly on the foregoing lot, sixty-seven feet; southwardly on Louis Judson's lot, twenty-four feet, or thereabouts; and eastwardly ——— belonging to Wm. H. Robertson, seventy feet, or thereabouts. One other lot, having thirty feet front on Royal street, by one hundred feet in

depth; bounded eastwardly by Royal street; northwardly and westwardly by premises belonging to John Forbes & Co.; and southwardly by a lot belonging to George Fisher." The partition deed between Chamberlain, Toulmin and Lewis, which is dated January 1, 1822, recites that the parties are tenants in common of a certain parcel of land in the city of Mobile, which is described as being " bounded north by Dauphin street, east by lots and lands belonging to J. Chighizola, south by the premises of Louis Judson, and west by Royal street, having a space on said Dauphin street of ninety-nine feet, and sixty-four feet on Royal street"; and which is then divided among in severalty.

" To so much of the deposition of said Chamberlain as tended to contradict the deed thereto appended, the plaintiffs objected, on the ground that the transcript of the record of the deed was, in the absence of the original deed, the best evidence of its contents; and that the deposition of Mr. Chamberlain was not admissible, in a court of law, to contradict the record, or to correct a mistake in the record. The court overruled the objection, and allowed the evidence to go to the jury; and the plaintiffs excepted.

" The defendants read in evidence a written agreement, entered into just before the trial commenced, as follows: That the original deed from Forbes & Co. and Innerarity to Chamberlain, Smoot and Slade was lost, or destroyed, and could not be found; that the defendant, and those under whom he claims, have been in possession of the land sued for since August, 1818, claiming the lot as their own; and that the defendant is now in possession.' They also proved that the premises sued for began one hundred and fifty, and extended to one hundred and seventy-five feet, east from Royal street, on Dauphin, down Dauphin; and contended that the plaintiffs' land, to which they really had a title, began at one hundred, and extended to one hundred and twenty-five feet, down said street from Royal. The main question in the cause was one of location; and whether the lot sued for was the plaintiffs' true locality, depended upon whether Chamberlain, Smoot and Slade's lot extended down Dauphin street one hundred and fifty feet, or only one hundred,—if the former, the plaintiffs have sued for their right land; if the

latter, they have not. The testimony above set out was all the evidence in the cause, except as to rents and improvements; and except that it was in proof, and not contradicted or called in question, that the lot sued for began at one hundred and fifty feet from Royal street, and extended twenty-five feet, fronting on Dauphin as before set forth.

" The court charged the jury, among other things,—

" 1. That they were to determine from the evidence before them whether there was a mistake in entering into the agreement first above set out; that if they found it was entered into by mistake, they should not hold defendants bound by it; and that if they found that the plaintiffs had sued for the wrong land, it would be evidence that the agreement had been entered into through mistake.

" 2. That the record copy of the deed to Chamberlain is presumed to be correct, and they ought not to hold it to be incorrect, unless satisfied by the evidence that the clerk had made a mistake. And the court remarked, that it felt much difficulty on this part of the case, but did not think it would be justice to permit a party to suffer by a mistake of the clerk."

The plaintiffs excepted to these charges, and asked the court to give the following instructions to the jury :

" 1. That, in the absence of the original deed, the record is the highest evidence of its contents, and should be received as superior evidence to the deposition of Mr. Chamberlain on the question ; which charge the court refused, and the plaintiffs excepted.

" 2. That the location of the lot sued for is solved by reference to the Chamberlain, Smoot and Slade deed, and for what is covered by it the jury will look to the certified copy of the deed, and not to any other proof offered; which charge the court refused, and the plaintiffs excepted.

" 3. That the record, and the transcript of such record certified by the clerk, is to be received by the jury as good and effectual, and available in law, as if the original even (?) were now produced; and that this means, that the jury, in the absence of the original, are to look at the record and transcript thereof, to ascertain the contents of the deed, and are not to look to the deposition of Mr. Chamberlain.

This charge the court refused, and the plaintiffs excepted.

" The plaintiffs then handed the court Clay's Digest, open at page 155, § 25, and asked the court to read that section to the jury, and to tell them that it was a statute of this State, in force as to this trial, and furnished the rule by which the contents of the deed to Chamberlain, Smoot and Slade were to be solved; which the court did, adding, 'provided you are satisfied from the whole evidence that the deed was correctly recorded by the clerk.' To this qualification of the charge the plaintiffs excepted.

The court charged the jury, also, that the deed from Simonton, as Shade's agent, was void,—the power being insufficient, and the deed not being in Shade's name.

" The defendants then asked the court to charge the jury, that if they believed from the evidence that Shade sold the lot in suit to Shields, in 1818, placed him in possession, and received the whole purchase money; and that the defendants, and others holding under Shields, have been in quiet possession ever since,—then they might presume that a proper deed was made by Shade, though none was *found* (?). This the court refused, but finally gave the charge, with this qualification, 'provided the evidence did not tend to negative such a presumption'; and to the charge thus given the plaintiffs excepted."

These rulings of the court are now assigned as error.


ROBERT H. SMITH, for the appellants :

1. The main question in the case is as to the location of the premises in controversy; and this depends upon the question, whether a record copy of a deed, the original being lost, is evidence of its contents, or whether the memory of a witness can be admitted against the record; and, if admissible, whether such evidence is of as high character and great weight as the record. The appellants contend that the record is the best and only secondary evidence; and this question seems to be settled by the express words of the statute.—Clay's Digest, 155, § 25; Code, § 1275; Evans v. Bolling, 8 Porter, 546; Hogan v. Smith, 16 Ala. 600; Sturtevant v. Robinson, 18 Pick. 179; Mills v. Barnes, 4 Blackf.

438; Coman v. State, *ib.* 243; 1 Green. Ev. §§ 84, 85, and. note; 1 Conn. 387.

2. The admissions of Lockwood were binding on his clients. No mistake in entering into it was shown, except by presumption. The court did not make the defendant's absolution from it depend on whether the plaintiffs had been induced to act upon it.—1 Green. Ev. §§ 186, 206; Starke & Moore v. Kenan, 11 Ala. 818; Wetherell v. Bird, 7 C. & P. 6.

3. The letter from the plaintiffs' ancestor did not authorize a conveyance, and was not evidence conducing to show color of title. It had no other effect than to mislead the jury, by inducing them to connect it with Simonton's deed.

4. The deeds objected to had no relation to, and in no wise affected, the plaintiffs' title, and should have been excluded. The partition deed between Chamberlain and his partners proves that, when that partition was made, they only owned or divided one hundred feet; but it tends to prove nothing as to the original grant.

The defendants claim from Simonton, and not from Shade. They claim adversely to Shade, and, by their assertion of title from Simonton, insist that Shade had no title. How, then, can they ask the court to presume that Shade conveyed to them? To presume a grant in such a case would be a fraud on the statute of limitations. The doctrine of presumed grants only runs against the government, or against some body against whom the statute of limitations does not run.— 3 Phil. Ev., pp. 496–8; 4 J. J. Mar. 316, 527.

JNO. T. TAYLOR, *contra*, made the following points :

1. There can be no doubt as to the mistake, shown by the parol evidence, in the recorded copy of Chamberlain's deed, making his lot front one hundred and fifty feet instead of one hundred; but the appellants contend that such evidence could not be introduced to show the contents of the original deed. The answer to this position is, that the record itself is but secondary evidence of the contents of the deed, and that there are no degrees in secondary evidence.—Cowen & Hill's Notes to Phill. Ev., vol. 3, pp. 1211, 1475, notes 221, 254, 295. The statute, on which the appellants rely, only provides one mode of proof, in case of the loss of the original deed, but does not exclude other modes of proof.

2. The defendants do not claim lot No. 7 through the plaintiffs' ancestor, and the question raised on his deed to them does not arise. But, if the record copy was right, and No. 7 was in fact the lot bought by plaintiffs' ancestor, then defendants have been in quiet possession ever since 1818, before the death of Shade; and payment in full being proved, the law will presume that a proper deed was afterwards executed, though none was proved.—1 Green. Ev. § 46; Wallace v. Maxwell, 7 Iredell's Law R. 135; Bierce v. Bierce, 15 Ohio, 529; Cowen & Hill's Notes, vol. 1, pp. 498–9.

3. An agent is always a competent witness for or against his principal. If, however, Simonton was interested, he was properly released. The letter attached to the deposition, with the deed to which it related, was only admitted to show the *bona fides* of the defendant's possession. Besides, the power of attorney to make the deed will be presumed.—6 Martin's La. R. 153; 1 Greenl. Ev. § 21; C. & H.'s Notes, p. 365, n. 311.

4. The deeds objected to were entirely relevant, and each was a link in the chain of title.

5. The agreement introduced by the plaintiffs was entered into only for a previous trial, and was waived by the subsesequent agreement. It was, moreover, made through mistake, produced by the false record.—Dorsey v. Gassaway, 2 Har. & J. 402; 1 Greenl. Ev. §§ 27, 206.

GOLDTHWAITE, C. J.—As to the action of the court in allowing the defendants to introduce evidence in opposition to their agreement in writing, we see no error. Conceding, so far as the present case is concerned, that attorneys may bind their clients by such admissions as were here made, it is only necessary to observe, that where they are made improvidently and by mistake, the court, by means of its coercive powers over its own officers, has authority to relieve against the consequences of the admission; regulating its action in this respect with a just regard to the rights of both parties, which it can do by setting aside the agreement upon terms which will meet the justice of the particular case.—1 Green. Ev. § 206. The evidence submitted to the court brought the question within the principle we have laid down;

and the authority, to the extent it was exercised, was judicious.

As to the principal question in the case—the admission of parol evidence to contradict the transcript of the deed certified by the clerk : The English cases certainly lay down the rule very broadly, that there are no degrees in secondary evidence (Rowlandson v. Wainright, 1 Nev. & Per. 8; Coyle v. Cole, 6 Car. & P. 81; Rex v, Hunt, 3 B. & Ald. 506; Brown v. Woodman, 6 Car. & P. 206); while, on the contrary, the current of American authorities goes very strongly to show that, although the facts may warrant the admission of secondary evidence, the best kind of that character of evidence which appears to be in the power of the party to produce, must be offered.—U. States v. Britton, 2 Mass. 464; Kello v. Maget, 1 Dev. & Batt. 414; Renner v. The Bank of Columbia, 9 Wheat. 582-597; Den v. McAlister, 2 Hals. 46-53; Blade v. Nolan, 12 Wend. 173. We confess that the American rule appears to us more reasonable than the English; and we see great propriety, if there was an examined copy of an instrument in the possession of a party, in refusing to allow him to prove it by the uncertain memory of witnesses. A copy of a letter, taken by a copying press, would unquestionably be better evidence of the original than the recollection of its contents by a witness; and the same reasons which would require the production of the original, if in the control of the party, would operate in favor of the production of the fac-simile, or of the examined copy. But, in all these cases, the strength of the proposition consists in the fact, that there is secondary evidence, in its nature and character better than that which the party offers, and that it is in his power to produce it. He certainly must be allowed to show, that what appears to be secondary evidence of a higher degree is not so in fact. In other words, he would be allowed to show that the paper, which purported to be a copy, was not in fact and in truth one.

To apply these principles to the case under consideration, the question is, whether the defendants below were concluded by the record of the conveyance in the office of the clerk of the county court. We should think it very unreasonable, that because the law authorized the conveyance to

Harvey and Wife v. Thorpe.

be recorded, that record should, in case of the loss or destruction of the original, be conclusive even on the parties to the deed.   It would be more unreasonable still to give this effect to it against a stranger.   That the legislature has the power to do so, is not denied; but we should require the use of the clearest and most unequivocal words to force us to such a conclusion.

The act of 1803 requires the clerk of the county court to record all conveyances of land lying in his county, duly certified and acknowledged, which are delivered to him for that purpose (Clay's Digest, 154-155); and the thirteenth section provides, that, in case of the loss or destruction of the original deed, the record, or a duly certified transcript, shall be received in evidence, "and be as good and effectual and available in law as if the original deed or conveyance had been produced and proved."   In giving to the record the same degree of force that the original deed would have had, it was doubtless presumed that the clerk would make a true copy, "word for word," as another section of the act requires him to do; and we think it was only the record when thus made that it was intended to invest with unimpeachable verity.   In other words, to make it a record, it must be a copy.   Even judicial records, made under the sanction of judicial officers, and in themselves originals, have not always been held conclusive as to jurisdictional facts.   Here the act contemplates nothing but a copy; and it is to this copy, when made by the clerk, that it was the intention of the law to accord unimpeachable verity.   It is *prima facie* evidence, on the ground that all officers must be presumed to have discharged the duties which the law requires of them; and the statute also dispenses with any further proof of the execution than the production of the record or the transcript.   But we are satisfied that it could never have been intended to make the record as effectual as the original, unless it was a true copy; and we must, therefore, hold that it is not conclusive.

As to the relevancy of the deed made by Simonton, as the agent of Shade, to Shields, and the letter to Simonton : It is clear that the letter conferred no authority on the latter to make the deed; and if it had, the conveyance as made was his act, and not the deed of Shade.   It is to be remembered,

however, that the main question in the case was the location of the premises. The lot sued for commenced one hundred and seventy-five feet east from Royal street; and if the jury should come to the conclusion that there was no mistake in recording the deed from Forbes & Co., to Chamberlain, Smoot and Slade, then the deed from Robertson to Shade would include the premises sued for; and it was to resist the right of the plaintiffs in that aspect, that we understand the deed was offered. It was admitted that the defendants had been in possession since August, 1818; and if their possession was to be referred to this deed, then the question would be, whether the jury might not presume what was necessary to make that deed effectual. Upon authority, the rule is, that where a party has proved a title to the beneficial ownership, and a long possession consistent therewith, courts will leave it to the jury to say whether a conveyance should not be presumed.—Green. Ev. § 46; Cow. & Hill's Notes to Ph. Ev. vol. 5, p. 267. A strong case would be, where a party held possession for more than twenty years under a bond for titles, having paid the purchase money. Here, a proposition is made by the owner of a lot to his agent, directing him to close the bargain for a sale; which is apparently done, and the purchase money paid to the agent. In such a case, after twenty-eight years uninterrupted possession, the rule we have adverted to might well have warranted the court in submitting it to the jury to presume a deed from Shade to Simonton, to support the conveyance which the latter had made; or they might, upon the same state of facts, presume that a deed was made directly to Shields. We see no error in the ruling of the court in this respect, or in the charge given in relation to the same question.

Neither do we regard the admission of the other deeds as erroneous. By the decision of the court upon the agreement made by the counsel, it became necessary for the appellees to show that the plaintiffs had no title to the premises sued for; and it was also necessary to make this proof, in both aspects in which the case presented itself. If the deed from Forbes & Co. to Chamberlain, Smoot and Slade called for one hundred and fifty feet on Dauphin street, then it would be necessary to show that the plaintiffs had no title to lot number

nine; while, if it called for but one hundred feet, it would be necessary to show the same fact as to lot number seven.  We have already seen that the deed from Simonton to Shields was admissible; and every other deed introduced tended to show that the title to lot number seven was not in the demandants.

Judgment affirmed.