January Term,
1861.

SEXSMITH VS. JONES and others.

SEXSMITH
v.
JONES et al.

Where an original mortgage has been destroyed by fire, if it was recorded, the party seeking to prove it, should produce a certified copy.

If the register made a mistake in recording the initial letter of one of the names, on proof of such mistake the copy, *it seems*, should still be admitted.

If the opposite party, after such proof, still objects to the admission of such transcript, and the court below rejects it, such party has no reason to complain of the admission of parol evidence of the contents of the mortgage.

| 13 | 565 |
|----|----|
| 96 | 47 |

APPEAL from the Circuit Court for *Winnebago* County.

Judgment was rendered in the circuit court for the plaintiff.

*Wheeler & Coolbaugh*, for the appellants.

*Bouck & Edmonds*, for the respondent.

*By the Court*, PAINE, J.   This was an action to foreclose a mortgage given by *Lyman S. Jones* to S. B. & J. A. Paige, together with a bond in the penal sum of $4,000, to secure them for goods to be thereafter sold and delivered by them to *Jones*.   They delivered goods to the amount, as they claimed, of $1344.84, and then assigned the bond and mortgage with the account, and also certain unsecured notes which they held against *Jones*, to the firm of Sexsmith & Crane, the notes making the whole debts transferred amount to $1586.50.   The respondent subsequently became possessed of the interest of Sexsmith & Crane, and brought this suit.   It appears that a chattel mortgage upon a quantity of logs, was also given by *Jones* to the Paiges, as an additional security for the same debt, and this was also assigned to Sexsmith & Crane.

April 10.

There are several points in dispute between the parties, arising upon the evidence, which is voluminous and in some respects conflicting.   We will briefly state our conclusions upon those matters of fact, without attempting to refer at length to the evidence in support of them.

The first question is, as to the amount of indebtedness which accrued to the Paiges, for goods sold in pursuance of the agreement by which the bond and mortgage were given. It appears that their books and other papers material to the

suit, including the mortgage itself, were burned at the great fire in Oshkosh, which occurred after the commencement and before the trial of the suit. The direct testimony in respect to the amount of the account, is therefore of the nature that must be expected in such a case. S. B. Paige was a witness, and testified to his general knowledge of the correctness of the books from which the items of the account had been copied, and that part of the goods were delivered by himself, and a part by his brothers. Yet when cross-examined, item by item, he was unable to specify who delivered every particular item, or of what each was composed. If he had undertaken to do this, it would have thrown great discredit upon his testimony; for such particularity with respect to the items of a long account, is beyond the power of human memory. Yet his testimony showing the manner in which the business was conducted—that the original entries were made in the books by the party making the sale; that he had compared the journal with the original entries; that he was present during the time the account accrued, delivering many of the items himself, and knowing that his brothers were delivering others from time to time—raises a strong probability of the correctness of the account as transcribed from the books. In addition to this, he swears positively that after they had assigned the account, *Jones* asked him its amount, and they looked over the books together, and *Jones*, after seeing the amount, said it was all right. It may also be remarked, that the principal testimony tending to impeach the correctness of the account, is that of *Jones* himself; and yet, on some points in the case, his testimony is so fully overborne by that of disinterested witnesses, that while we do not feel authorized to conclude that he has intentionally misstated the facts, yet we are obliged to think that his memory is not entirely accurate. We are therefore of the opinion, from the whole evidence, that the amount of the account properly due to the Paiges at the time they assigned it, was $1,344 84.

It appears from the evidence, that after the assignment of these mortgages and claims to Sexsmith & Crane, *Jones* sold to the latter the logs covered by the chattel mortgage, with

January Term,
1861.

SEXSMITH
v.
JONES et al.

the exception of a small amount which he was to retain and dispose of. And it is now claimed by *Jones*, that by the terms of the agreement of sale, the amount of these logs was to be applied in payment of this mortgage; whereas it is claimed by the plaintiff, that the agreement was that the amount of those logs was to be applied first to the payment of an unsecured account due to Sexsmith & Crane, and the balance only to the Paige debt. We are satisfied from the evidence that the latter was the truth. The appellant admits that in the receipt which he took at the time of the sale, and which he refused to produce at the trial, it was expressly stated that the logs were to be applied as claimed by the plaintiff. It should require pretty clear evidence to destroy the effect of this receipt; but the balance of the evidence, as a whole, tends rather to corroborate than to weaken the conclusion to which it tends. *Jones* alone swears to the contrary, and claims that he had not his glasses present to read the receipt. But *Sexsmith* swears that the agreement was as stated in the receipt. He swears also that one of the inducements to this agreement, on the part of *Jones*, was that he was allowed to retain a part of the logs and dispose of them to other parties. *Jones* admits that he was to, and did, retain some of the logs; and yet his version of the agreement furnishes no motive for the plaintiff to allow him to do so. For having a chattel mortgage on the whole, if he was to apply what he bought on the mortgage debt, why should he relinquish a part of them absolutely to the mortgagor? No satisfactory answer was given to this question. But it was very natural for the plaintiff to relinquish this part, if he could thereby obtain the right of applying the balance on his unsecured account.

. But the judgment given by the court below, had the effect of allowing the plaintiff to apply those logs not only on the unsecured account of Sexsmith & Crane, but also on the unsecured notes which they had received from the Paiges, before any part was applied on the mortgage debt. And we think this was not warranted by the agreement. The testimony of both parties shows that the point in controversy between them at the time this agreement was made, was

whether the amount of the logs should be applied on the mortgage debt, for which they were held as security, or whether Sexsmith & Crane might first apply them on their unsecured account. *Jones* finally consented that they might so far divert them; but we are satisfied from the testimony of both parties that this was the extent of the stipulation in favor of *Sexsmith*, and that it was the understanding that after that account was paid, the balance should apply on the mortgage debt for which the logs were originally held. It is true, the plaintiff swears that the balance was to apply on the Paige debt. But by that they evidently contemplated the mortgage debt, which constituted the greater part of it. And if it had been the intention to stipulate for the right to apply them on the unsecured notes received from the Paiges, as well as on the Sexsmith & Crane account, the notes and accounts would have been spoken of together in that connection. We think, therefore, that the amount which the judgment allowed to be applied upon those notes, should have been applied upon the mortgage, and that the sum of $241 66 should be deducted from the amount adjudged to be due thereon.

This disposes of all the questions of fact which we deem it necessary to notice.

The defendants' counsel objected, on the trial, to the admission of parol evidence of the contents of the mortgage, it appearing that the original had been burned, but that it had been recorded, so that a transcript might be procured. We are inclined to adopt as the correct rule in respect to the admission of secondary evidence of the contents of written instruments, that which is stated as the result of the American authorities on the subject, which is, that if, from the nature of the case, it is manifest that a more satisfactory kind of evidence exists, the party will be required to produce it. 1 Greenl. Ev., § 84, note 2. We think that ordinarily, where a deed or mortgage has been recorded, and the original is lost, the transcript, which the law makes original evidence, should be produced. But here the party produced and offered a transcript of the record, and the defendant objected to it, for the reason that the register, instead of record-

ing the names of the mortgagees " S. B. & J. A. Paige," had January Term, 1861.
written them J. B. & J. A. Page. This mistake was fully
explained by the evidence, and we are not prepared to say
that upon' such explanation the transcript should not have
been admitted. We are inclined to think it should. But
if it was not admissible, there being no other record, then
there was no better evidence than the parol evidence. The
party here certainly offered all the evidence that existed on
the subject, and could not do more.

The judgment of the circuit court is modified, by de-
ducting from the amount adjudged to be due, the sum of
$241 66, with costs in favor of the appellant, and the cause
remanded to the circuit court, that the judgment, as so mod-
ified, may be enforced.