NORTHWESTERN IMPROVEMENT COM-
PANY, a corporation, Plaintiff and
Respondent,

v.

Bruce Arthur NORRIS; M. C. Rausch; Gor-
don J. Williams; The Prudential Insur-
ance Company of America, a corporation;
and all other persons unknown claiming
any estate or interest in or lien or incum-
brance upon the property described in the
complaint, Defendants,

and

Bruce Arthur Norris, Defendant and
Appellant.

No. 7549.

Supreme Court of North Dakota.

Dec. 19, 1955.

Rehearing Denied Feb. 17, 1956.

———◇———

Robert Wallin, Hettinger, and Jackson & Krause, Lemmon, S. D., of counsel, for defendant and appellant, Bruce Arthur Norris.

Conmy & Conmy, Fargo, for plaintiff and respondent.

MORRIS, Judge.

In this action the plaintiff seeks to quiet title in itself to

"all minerals of any nature whatsoever, including coal, iron, natural gas, and oil upon or in the following described real property located in the County of Grant in the State of North Dakota, towit:

"Section Twenty-three (23) in Township One Hundred Thirty-One (131) North, Range Ninety (90) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"The Southeast Quarter (SE¼) of Section Twenty-five (25), Township One Hundred Thirty-One (131) North of Range Ninety (90) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 160 acres, more or less.

"Section Fifteen (15) in Township One Hundred Thirty-One (131) North Range Ninety (90) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less,

together with the use of such surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same, but subject to the obligation to pay to the owner of the surface of such lands the market value at the time mining operations are commenced of such portion of the surface as may be used for such operations, including any improvements thereon, and subject to the right of the owner of the surface at all times to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use."

The trial court directed title to be quieted in the plaintiff to this property and judgment was entered accordingly. From this judgment the defendant Bruce Arthur Norris alone appeals.

The plaintiff rests its immediate claim of title to all of the property involved in the action to quiet title on a quitclaim deed dated September 29, 1942, issued by the Northwestern Improvement Company, a New Jersey corporation, to the plaintiff Northwestern Improvement Company, a Delaware corporation. This deed was recorded January 8, 1943, and grants, bargains, quitclaims, and conveys to the plaintiff, its successors and assigns forever, all minerals and mining rights "heretofore excepted and reserved to itself, its successors and assigns" by the grantor.

The plaintiff contends that is grantor, the New Jersey corporation, became the owner of the surface and all of the minerals in

or under the lands involved in this action by virtue of a special warranty deed executed by Walter B. Horn and Evelyn L. Horn, his wife, November 18, 1897, and recorded in the office of the register of deeds of Morton County, March 26, 1898, and transcribed to the records of the office of the register of deeds of Grant County wherein the lands are now situated and that in any conveyances executed by the New Jersey corporation to the lands herein involved it conveyed only the surface and reserved to the grantor, its successors and assigns forever, "all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land, * * *." The plaintiff further contends that regardless of what the records in the office of the register of deeds in Grant County may or may not show, the New Jersey corporation never parted with title to any of the minerals because of the reservation in the deeds which it issued and the title to those minerals passed to the plaintiff by virtue of its quitclaim deed from the New Jersey corporation.

The appellant contends that he acquired his title as an innocent purchaser for value; that he is protected by our recording acts, Chapter 47–19 NDRC 1943; and that he is further protected by our marketable record title act, Chapter 47–19A NDRC 1953 Supp., which was enacted as Chapter 280 SLND 1951. Of the titles here involved that to Section 15 is the least complicated and since it involves most of the issues presented by this appeal we discuss it in some detail. The record title in the office of the register of deeds of Grant County shows that on May 6, 1913, the Northwestern Improvement Company, a corporation organized and existing under the laws of the State of New Jersey, owned title to this land without reservation or exception. On that date the New Jersey corporation executed a warranty deed to John H. Krueger. This deed was recorded May 31, 1913, in Book 33 of Deeds, Page 368, of Morton County and transcribed to Book 15, Page 309, in the office of the register of deeds in Grant County. It contained this provision:

"Excepting and reserving unto the grantor its successors and assigns, forever all coal and iron upon or in said land, together with the use of such of the surface as may be necessary for exploring for, and mining or otherwise extracting and carrying away the same. But the grantor its successors and assigns, shall pay to the grantee or to his heirs or assigns, the market value at the time the mining operations are commenced of such portion of the surface as may be used for such operations, including any improvements thereon the grantee his heirs or assigns, shall notwithstanding have at all times the right to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use, * * *."

On March 4, 1914, John H. Krueger and his wife issued a warranty deed to all of Section 15 to F. G. Collins. This deed was recorded on April 3, 1914, in Book 45 on Page 112 in the office of the register of deeds of Morton County and transcribed to Book 6 on Page 520 in the office of the register of deeds of Grant County.

On August 3, 1915, F. G. Collins and his wife executed a warranty deed to John Kreutz which was recorded May 12, 1919.

On March 31, 1919, John Kreutz and his wife executed a warranty deed to F. L. Nigey which was recorded April 21, 1919.

On August 5, 1929, F. L. Nigey executed a warranty deed to Elizabeth Nigey, his wife, which was recorded April 18, 1936. On August 30, 1935, Elizabeth Nigey, a widow, executed a warranty deed to Gordon G. Williams which was recorded April 18, 1936.

On November 2, 1942, Gordon G. Williams and his wife executed a warranty deed to Robert J. Hanley. This deed was recorded November 16, 1942.

The next instrument in chronological order appearing of record affecting title to Section 15 is the quitclaim deed heretofore mentioned from the Northwestern Improvement Company of New Jersey to the plaintiff which was recorded January 8, 1943, purporting to convey to the plaintiff all the minerals and mining rights which the New Jersey corporation had reserved to itself.

On July 23, 1953, Robert J. Hanley and his wife executed a quitclaim deed to Bruce Arthur Norris, the appellant, which was recorded on August 10, 1953. This deed purports to grant, bargain, sell, remise, release and quitclaim to the grantee, his heirs and assigns, forever, all the right, title, interest, claim, or demand in or to the land described therein. According to the record, the title which John H. Krueger received from the Northwestern Improvement Company of New Jersey was transferred through various grantors intact until it reached the present owner, the appellant. The title which Krueger obtained was one in fee simple subject only to the provision of the deed excepting and reserving all coal and iron upon or in the land. The plaintiff contends that the original Krueger deed excepted and reserved all minerals and that through an error in recording only coal and iron were shown to be excepted and reserved. The plaintiff was not able to produce the original deed and undertook to show its contents.

The trial court admitted in evidence over appellant's objection a number of photostatic exhibits offered by the plaintiff, including a price list of lands for sale to actual settlers by the Northern Pacific Railway Company. Among the lands listed was Section 15 in controversy here. This list was dated February 25, 1910, and contained a page of information as to terms and conditions of sale. It described a five year credit plan and a statement that all contracts and deeds, except to land in certain counties not of interest in this controversy, would contain the provision

"Excepting and reserving unto the party of the first part, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land * * *."

All of these exhibits are photostatic copies of records of the land department of the Northern Pacific Railway Company or the Northwestern Improvement Company. The next exhibit is an offer signed by W. E. Scripture applying to purchase Section 15 "on your Five year credit plan." Attached to this application to purchase is a synopsis of the terms and conditions of sale. Among them is a statement providing for the exception and reservation of all minerals in the same language as expressed in the price list. The next exhibit is a "Five Year Contract" number 5261N, dated April 7, 1910, in which the Northwestern Improvement Company, a New Jersey corporation, sells Section 15 to W. E. Scripture for two thousand two hundred forty dollars to be paid in a cash installment and five subsequent annual payments. This contract contains the exception and reservation by the vendor of all minerals in the language previously quoted. Still another exhibit is from the records of the Northwestern Improvement Company, being a memorandum of the sale of Section 15 to W. E. Scripture by contract number 5261N on April 7, 1910 under a five year contract. This memorandum contains these notations: "Price List No. 6, Dated Feb. 25th, 1910." "All minerals reserved including coal, iron, natural gas and oil." There was also introduced in evidence a record of land sale of the Northwestern Improvement Company for the month of April 1910. It shows the sale of Section 15 to W. E. Scripture by contract number 5261N, which was assigned to John H. Krueger, September 15, 1910. It also shows that the land was deeded by deed number 8998 on May 6, 1913. Under a column headed "Remarks" appears this statement: "All minerals reserved including coal, iron, natural gas and oil. All grazing. Price List No. 6, Dated Feb. 25th, 1910. Office Sale." Another photostatic exhibit shows a page from the deed record of Northwestern Improvement Company from which it appears that a deed was issued to Section 15 on May 6, 1913, number 8998, contract number 5261N, to John H. Krueger. The form of the deed was designated as "D.D." From testimony and other exhibits it appears that the form of deed designated as D.D. was a printed form of deed used by the Northwestern Improvement Company containing a reservation of all minerals in the language previously quoted.

The final exhibit of interest at this point is a photostatic copy of page 412 of a record of the Northwestern Improvement Company known as "the impression book." A witness who was employed by the plaintiff at the time the records involved herein were made, and still is so employed, testified regarding the making of plaintiff's records as follows:

"After all payments were made on the contract the contract was—the purchaser's copy of the contract would be surrendered and a deed would be prepared and the deed number, the date, form of the deed and the parties who checked it with the contract record and the deed record would be shown on that, on the Sales Slip, completion of the Sales Slip. After the deed was prepared, it was prepared on a form in indelible ink and typewritten portion was indelible ribbon and copy would be made in the Impression Book and notation made in the Deed record and then it would be presented to the executive department for completion, for execution, after which it would be returned to the Land Department and be sent out to the purchaser or to the grantee, by either registered mail or by express."

The copy of the page of the impression book shows that a deed was prepared on form D.D., number 8998, contract number 5261N, dated May 6, 1913, purporting to convey from the Northwestern Improvement Company to John H. Krueger all of Section 15, Township 131, Range 90 in Morton County, North Dakota, containing 640 acres more or less, "excepting and reserving unto the grantor, its successors and assigns forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land, * * *."

The impression copy appears to have been made before the execution of the instrument, as no signatures appear thereon.

The appellant contends that the court erred in receiving in evidence and in considering the exhibits to which we have referred on two related grounds. First, that the record of the register of deeds is the best evidence of the contents of recorded instruments in the absence of the originals; and second, that if the record constitutes only secondary evidence it is the best secondary evidence and entitled to supremacy over private business records.

Appellant's argument seems to be that the record of a lost deed in the office of the register of deeds is conclusive as to the contents of the lost instrument. He points to the provision of Section 31–0806 NDRC 1943 that:

"The record of such instrument, or a duly authenticated copy of the record, may be read in evidence with the same effect as the original, on proof by affidavit or otherwise that the original is not in the possession or under the control of the party producing such record or copy."

The contention is that the words "with the same effect" mean that the record in all things takes the place of the lost deed; that the record therefore is protected by the parol evidence rule; and that neither parol nor other extrinsic evidence may be introduced to vary the terms of the record. We do not so construe the statute.

The phrase upon which the appellant relies, in slightly different form, came into our laws in Section 5696 of the Revised Codes of North Dakota, 1895, and read: "with the like effect as the original." It remained unchanged throughout the various revisions and compilations of the statutes until our 1943 Revised Code when the word "like" was changed to "same". The reviser's note in the original draft by the code commission states: "Revised for clarity without change in meaning."

We have adopted the rule that where a general statutory revision has been made resulting in the alteration of phraseology the change in phraseology will not be construed as altering the law unless it clearly appeared that there was a legislative intent so to do and in ascertaining such intention reference may be had to the prior statute. State v. Tjaden, N.D., 69 N.W.2d 272; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, 35 N.W.2d 137; State ex rel. Kositzky v. Prater, 48 N.D. 1240, 189 N.W. 334.

We find a direct answer to appellant's contention that because of Section 31–0806, supra, extrinsic evidence cannot be introduced to show a mistake in the record of a lost instrument in Booth v. Tiernan, 109 U.S. 205, 3 S.Ct. 122, 123, 27 L.Ed. 907. Objection was made to the admissibility of evidence tending to show that there was a clerical error in the description of land as entered upon the record and contained in a certified copy. The original deed was lost. The objection was based upon an Illinois statute authorizing the record of a deed or a certified transcript of the record to be used as evidence in place of a lost original and providing that it might be read in evidence " 'with like effect as though the original of such deed, conveyance, or other writing was produced and read in evidence,' * * *." The ruling of the trial court to the effect that evidence as to the mistake in the description was competent was challenged on appeal and the supreme court said:

"The ruling of the circuit court on this point was correct. The language of the statute was intended merely to declare that the record of a deed, or a transcript from the record, though a copy only, and therefore in its nature merely secondary evidence, should nevertheless have the same effect, when competent as evidence at all, as the original itself, if it had been produced, upon the determination of the issues to be tried. It was not intended to declare that the record or a copy from it should, in law, be an original instrument for all purposes. The presumption is that as public officers gen-

erally perform their prescribed duties accurately, that the record, and all certified transcripts from it, will be true copies of the original; but they are none the less copies on that account, and are made evidence only in lieu of the original, and on the grounds on which secondary evidence is permitted to be given. And there is nothing in the statute, either expressed or implied, which forbids the party from showing by extrinsic proof, otherwise legitimate, what the contents of the lost original really were, where it is shown that the record itself, or a copy from it, is not a true copy. By the very terms of the statute, the record of a deed is not original evidence, for it can be used only on proof of the loss of the original deed, or that the latter cannot be produced by the party offering the proof; and the object of the statute evidently was to require recording, in the first place, as notice to subsequent purchasers, and in the second, to supply a convenient statutory mode and instrument of secondary evidence." See also Nixon v. Cobleigh, 52 Ill. 387; Harvey v. Thorpe, 28 Ala. 250, 65 Am. Dec. 344; McIntyre v. White, 124 Ala. 177, 26 So. 937; Sexsmith v. Jones, 13 Wis. 565; Thompson on Real Property, Permanent Edition, Section 4375.

In support of his contention that the record in the office of the register of deeds is the best secondary evidence and is entitled to supremacy, appellant relies upon the rule that the proponent of secondary evidence must produce the best secondary evidence which is in his power to produce. See 20 Am.Jur., Evidence, Section 404. That rule is not applicable here where a mistake of the recording officer is in issue. What the appellant would have us hold if we acquiesced in this argument is that in the absence of the original the record is conclusive. We rejected that contention in our discussion of the effect of Section 31-0806 NDRC 1943.

Jackman v. Lawrence Drilling and Development Company, 106 Kan. 59, 187 P. 258, 261, involved an oil and gas lease. The

original lease had been lost and it was contended that it had been incorrectly recorded. The defendants introduced the testimony of a number of witnesses to show the contents of the lost instrument. The trial court found for the defendants on the basis of this testimony. In sustaining the trial court the supreme court said:

"We start with the presumption, of course, that the register of deeds performed his duty properly, and that the record is correct. But this presumption is rebuttable. Zeiner v. Edgar Zinc Co., 79 Kan. 406, 99 P. 614. Mistakes sometimes occur in copying, and in comparing the original with the recorded copy. * * * The original instrument is primary evidence, and the recorded copy but secondary evidence. If a variance were shown to exist between the original as it was filed and the recorded copy, the former would prevail."

Section 31-0801 NDRC 1943 provides in part that:

"A record of an act, condition, or event shall be competent evidence, insofar as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

"2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

"3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission."

This section is an enactment of the uniform business records as evidence act. Its purpose is to enlarge the operation of the business records exception to the hearsay evidence rule and should be liberally construed. Loper v. Morrison, 23 Cal.2d 600, 145 P.2d 1; Fuller v. White, Cal.App., 193 P.2d 100. The sufficiency of the foundation to permit the admission of evidence under this statute is primarily for the trial court. Fargo Mercantile Co. v.

Johnson, 47 N.D. 304, 181 N.W. 953. The ruling of the trial court on the admission or exclusion of records under this statute will not be reversed in the absence of a manifest abuse of discretion. Cantrill v. American Mail Line, Ltd., 42 Wash.2d 590, 257 P.2d 179. We find no such abuse of discretion here.

■ We have reached the conclusion that the trial court properly admitted in evidence the exhibits to which we have referred to show the contents of the deed issued by the Northwestern Improvement Company on May 6, 1913, conveying to John H. Krueger all of Section 15. We agree with the trial court that the evidence establishes that the original deed contained the provision heretofore quoted excepting and reserving to the grantor all minerals; that the deed was erroneously recorded in the office of the register of deeds in that the record shows only a reservation of coal and iron and that the original deed has been lost.

Up to this point we have determined that the Northwestern Improvement Company of New Jersey sold to W. E. Scripture the surface of Section 15 on contract which had the effect of severing the title to the minerals from the surface. The vendor retained title to the minerals. The vendee obtained an equitable title to the surface. The vendee assigned the contract to John H. Krueger and upon compliance with the terms of the contract by the assignee, a deed was issued conveying to him the legal title to the surface and excepting and reserving the fee simple title to the minerals in the grantor. Due to an error in recording the deed the records show an exception and reservation of only coal and iron.

We now consider the contention of the appellant that he is an innocent purchaser relying upon the record title and as such he is now the owner of the surface and of all of the minerals except coal and iron.

■ When the Northwestern Improvement Company of New Jersey contracted to sell this land to W. E. Scripture it severed the title to the minerals from the equitable title to the surface. State v. Northwestern Improvement Company, 72 N.D. 393, 7 N.W.2d 724. When the vendor in that contract executed and delivered its deed pursuant thereto to John H. Krueger, assignee of the vendee, the exception and reservation of the minerals in the deed completed the severance of the two estates and created a fee simple estate in the minerals which was retained by the New Jersey corporation. Beulah Coal Mining Company v. Heihn, 46 N.D. 646, 180 N.W. 787.

A comprehensive search has disclosed no decisions directly in point on the responsibility of a grantor for a mistake in the recording of an instrument containing an exception or reservation in favor of the grantor. Decisions bearing obliquely on the problem are almost equally divided. See annotation 70 A.L.R. 595. Most of these decisions involve conflicting rights of grantees and innocent purchasers. The principles applied and the reasoning advanced in support of the divergent views of the courts are well stated in Tiffany, Real Property, Third Edition, Section 1273, as follows:

"The courts of the different states are divided upon the question as to who must suffer the loss occasioned by an error made by the officer in recording a conveyance deposited with him for record. Some courts hold that a grantee, by lodging the instrument with the proper officer for record, acquits himself of all responsibility as to the actual recording, and that from that time it is notice to subsequent purchasers of what it contains, and not of what the recording officer may make it show on the record. This view is usually based upon the language of the recording statute of the particular state, providing in effect that a conveyance shall be operative as a record, or as against a subsequent purchaser, from the time that it is filed or deposited for record. Other courts hold that subsequent pur-

chasers are bound only by what the records show, and that the grantee in a conveyance, in order absolutely to guard against mistakes by the recorder, and to insure the preservation of his rights as against subsequent purchasers, must ascertain that the recording is correctly done. This latter view is usually based on the theory that the recording officer is to be regarded, in respect to the record of any particular instrument, as the agent of the beneficiary under the instrument, and that the latter is in a position, by the exercise of a considerable degree of diligence, to ascertain whether the officer has correctly performed his duty, which a subsequent purchaser, even by the exercise of the greatest diligence, could not possibly do. This view has occasionally been adopted even when the statute in terms provided that the instrument shall operate as notice from the time of its filing for record."

Similar discussions are found in Thompson on Real Property, Permanent Edition, Sections 4371, 4372, and 4373; Patton on Titles, Section 39; Jones on Mortgages, Eighth Edition, Sections 634, 636; 45 Am. Jur., Records and Recording Laws, Sections 113–117.

■■ We have difficulty in applying to the responsibility of the grantor for an error in recording a deed the reasoning of either line of authority applied in controversies between the grantee and an innocent purchaser. The plaintiff argues that when the deed was deposited in the office of the register of deeds the actual contents constituted constructive notice to subsequent purchasers even though the register of deeds omitted some of the contents when the deed was copied into the record. This argument is based on Section 47–1908 NDRC 1943 which provides:

"An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the register's office with the proper officer for record."

However, section 47–1945 provides:

"The deposit and recording of an instrument proved and certified according to the provisions of this chapter are constructive notice of the execution of such instrument to all purchasers and encumbrancers subsequent to the recording."

These sections must be construed together in determining their effect in providing constructive notice. Their proper construction is that an instrument gives only temporary constructive notice of its contents when deposited in the office of the register of deeds and that when the instrument is recorded the record for purposes of constructive notice relates back to the date of deposit and as of that time is constructive notice of the contents actually and correctly recorded. Cady v. Purser, 131 Cal. 552, 63 P. 844, 82 Am.St.Rep. 391; Dougery v. Bettencourt, 214 Cal. 455, 6 P.2d 499; Sinclair v. Gunzenhauser, 179 Ind. 78, 98 N.E. 37, 100 N.E. 376; Whalley v. Small, 25 Iowa 184; Terrell v. Andrew County, 44 Mo. 309.

■ The verb "record" as used in our recording statutes means to transcribe or copy the instrument deposited with the register of deeds so that a copy of the instrument is made a part of the permanent records of the office. Lincoln County v. Twin Falls North Side Land & Water Co., 23 Idaho 433, 130 P. 788; Dougery v. Bettencourt, supra; Cady v. Purser, supra; Miller v. Bradford, 12 Iowa 14; Chamberlain v. Bell, 7 Cal. 292, 68 Am.Dec. 260; Shimmel v. People, 108 Colo. 592, 121 P. 2d 491.

■ In Cady v. Purser, supra, the court considered the effect of a statute similar in text and identical in meaning with our Section 47–1908 and it was held that in order for a recorded instrument to be constructive notice to subsequent purchasers the instrument must be actually recorded; that recorded means transcribed in some permanent book and that a mere deposit of the instrument with the recorder is not suf-

ficient. Also Dougery v. Bettencourt, 214 Cal. 455, 6 P.2d 499.

In Terrell v. Andrew County, 44 Mo. 309, the court said:

> "The statute says that when the deed is certified and recorded it shall impart notice of the contents from the time of filing. Certainly; but this is to be understood in the sense that the deed is rightly recorded, and the contents correctly spread upon the record."

We believe that the California and Missouri cases were correctly decided and when our statutes above quoted are considered together we are impelled to reach the same conclusion.

We are aware that the Supreme Court of South Dakota in Parrish v. Mahany, 10 S.D. 276, 73 N.W. 97, 66 Am.St.Rep. 715, reached the opposite conclusion under statutes similar to ours. However the court appears to have only considered the statute providing that an instrument is deemed recorded when deposited in the register of deeds office. Other statutes are not mentioned in connection with this point.

The plaintiff cites and quotes from Atlas Lumber Company v. Canadian-American Mortgage and Trust Company, 36 N.D. 39, 161 N.W. 604. In that case it appears that the clerk of the district court in entering a satisfaction of a mechanic's lien erroneously showed the wrong lien as having been satisfied. There was no question but that the lien so erroneously satisfied had been properly filed and recorded. In the syllabus this court laid down the rule that:

> "One who is required to file an instrument for record as a protection to subsequent purchasers and incumbrancers is not chargeable with the consequences of errors committed by the recording officer in entering it as affecting property not embraced in the instrument."

■ The principle of law thus stated has no application to the case under consideration. The plaintiff quotes language from the opinion which it argues is applicable here. After commenting that recording statutes operate to the advantage of subsequent purchasers and encumbrancers, the court said:

> "In view of the purpose for which recording statutes are adopted, we think it more just and more consonant with reason to hold that the consequences of the failure of a recording officer to perform his statutory duties with precision and accuracy should be visited rather upon those in whose interest such statutes are enacted than upon those who have in all ways complied with the statutes requiring the filing of instruments for record."

That language is a part of the reasoning of the court and must of course be read in the light of the problem that the court was then considering. But even when considered as a general statement of the law, it is not applicable to the facts in this case where the grantor reserved an interest in the real estate which it was its duty to protect as against the statutory rights of a subsequent purchaser in good faith and for valuable consideration.

■ The plaintiff points out that the Northwestern Improvement Company of New Jersey was the grantor in the deed to John H. Krueger, the appellant's remote grantor, and argues that regardless of where a loss should fall that results from an error of the register of deeds as between the grantee who had the deed recorded and subsequent innocent purchasers, the Northwestern Improvement Company of New Jersey had no duty to record the deed and did not record it and is as innocent as subsequent purchasers of the Krueger title. It is true that most courts that fix the liability for loss on the grantee do so either on the theory that he possessed and controlled the deed and had an opportunity and duty to see that it was properly recorded or that the register of deeds was the grantee's agent for the purpose of correctly recording the deed and the grantee is therefore liable for his mistakes. The grantor in this case has a responsibility that an innocent purchaser does not have. It, as

well as the grantee, is a beneficiary under the deed. It executed and issued the instrument creating two estates in real property where only one had previously existed. We have no statute fixing either the duty or responsibility for placing a deed of record. In order to determine the responsibility of one who issues a deed which has the effect of creating two estates, one of which he retains while conveying the other to the grantee, we must turn again to our recording statutes.

Section 47–1941 NDRC 1943 provides:

"Every conveyance of real estate not recorded as provided in section 47–1907 shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is recorded, * * *."

Section 47–1907 thus referred to provides:

"An instrument entitled to be recorded must be recorded by the register of deeds of the county in which the real property affected thereby is situated."

The purpose of this section is to prescribe the duty of the register of deeds. We have already discussed the meaning of the verb record and found that it means not only to file but also to transcribe or copy the instrument in the proper record book. It follows that Section 47–1941, above quoted, in effect provides that every conveyance of real estate not filed and transcribed is void as against any subsequent purchaser in good faith.

Section 47–1942 provides:

"The term 'conveyance' as used in section 47–1941 shall include every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except a will or power of attorney."

An exception or reservation such as the one involved in this action affects the title to real estate and falls within the scope of this statutory definition of conveyance. Bradley v. Walker, 138 N.Y. 291, 33 N.E. 1079; Wayt v. Patee, 205 Cal. 46, 269 P. 660.

The deed from the Northwestern Improvement Company to Krueger had two beneficiaries, the grantor and the grantee. In the former it created a fee simple estate in the minerals separate and apart from the surface. In the latter it created a fee simple estate in the surface and under our statutory definition of "conveyance" it was in effect a conveyance of each estate. Under the provisions of Section 47–1941, above quoted, if not recorded it was void as against any subsequent purchaser in good faith. Insofar as it was a conveyance of the property reserved and excepted it was never recorded and afforded no notice to innocent purchasers.

The argument that it was the duty of the grantee and not the grantor to record the deed and see that it was properly transcribed in the records is not tenable here. The deed operated as a conveyance to the grantor in that it affected an interest in real property which the grantor owned. As against an innocent purchaser the deed was void as to that interest unless that interest was shown of record. The plaintiff's grantor executed and issued the deed. It created the exception and reservation by which plaintiff now claims title to all of the minerals. We reach the conclusion that it was the duty of the grantor to protect its interest against any subsequent purchaser in good faith by making certain that the reservation and exception in the instrument which it had issued was properly recorded. The plaintiff's grantor having failed to so protect its interest, it had no interest in the land in question other than in iron and coal to convey to the plaintiff which could be asserted against innocent purchasers. As to all minerals

except coal and iron the defendant, Bruce Arthur Norris, became a subsequent purchaser in good faith and for value. His title thereto must prevail.

While we have confined our factual discussion of title to Section 15, it appears from the record that the controlling facts regarding the title to all land involved in this action are similar to those here discussed. The legal principles which we have here discussed are equally applicable to those facts and govern the result as to all lands involved in this action. The judgment appealed from is reversed. The case is remanded to the district court for entry of judgment conformable to this opinion.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.