Walling, Judge.
The appellee was plaintiff in the district court, *and brought this action against the appellant company, under the statute, to recover damages on account of the death of appellee’s husband, who was fatally, injured, by -colliding with appellant’s electric street ear, in consequence of the alleged negligence of the latter’s servants in the management and operation of the car. -The trial in the district court resulted in a verdict for the plaintiff, appellee here, and from the judgment entered upon that verdict the defendant below appealed. The facts will be stated in the course of the opinion.
1. The first five assignments of errors relate to the ruling of the district court with respect to the challenge by defendant, for cause, of two of the persons summoned to serve on the jury. The bill of .exceptions discloses that, 'after the examination by counsel for defendant of all the jurors called into the box, before he had announced that he “passed for cause,” the following occurred:
“Defendant’s counsel: I do not desire to pass for cause; I may have some challenges for cause.
The court: You have passed for cause. If you *607 do not challenge for cause at the time you examine the juror, you have passed for cause.
. Defendant’s counsel: I desire at this time to exercise a challenge of certain jurors for cause. Having examined all of the jury, and not having stated to the court that I waived or passed for cause any of the jurors so examined, and not desiring to exercise a valid challenge for cause, the court refuses to permit me to do it.
Plaintiff’s counsel: So far as I am concerned, I am willing that he make his challenges and let your honor pass upon them.
The court: It has been the settled practice of the court for fifteen years, or longer, that when a man is passed without any suggestion of counsel, that he is passed for cause. A statement at the close that the juror is passed for cause is simply a formality. He is passed for cause when he proceeds to examine the next juror.
Defendant’s counsel: We desire to save an exception to the ruling of the court. I desire to say that there are certain jurors who have served within a year, whom we desire to challenge under the statute.
The court: You knew that as well at the time of the examination as you do now.”
At the afternoon session, the discussion was resumed as follows:
“Defendant’s counsel: Regarding the matter we were discussing, I find this examination was not taken down by the stenographer, so there is no way of preserving the answers of the jurors. I would like to have the record show that Mr. Peierstein on his examination showed that he had served the last *608 term of court in this division; also Mr. Hawkins served, I think, in the county court within a year, and we desire to challenge those two gentlemen for cause upon the ground that they have served within the year. That, in addition to what I stated this morning, will be all I desire.
The court: The challenge is overruled on the ground that counsel did not exercise it at the time the juror disclosed it upon his examination.
Defendant’s counsel: To which we desire to save an exception. I know ordinarily the rule is this, but sometimes I have taken the other method. I do not desire to take any short cuts on either court or counsel. We desire, for the purpose of preserving the record, to show-that defendant has exercised all of its peremptory challenges.
Plaintiff’s counsel: I would prefer to try this case upon its merits. If (defendant’s counsel) feels that he wants to make those challenges, I would prefer to letjiim make them, and do away with all technicalities in the trial of the case.
The court: The court does not consider it a technicality. The court considers it an invasion upon a well-established practice which has been followed for years in this court, and the court does not desire to change it.or to set any precedent.”
The challenge sheet, or list of the twenty jurors, with the peremptory challenges of both parties noted thereon, was incorporated in the bill of exceptions, and indicates that the defendant exhausted its peremptory challenges, two of the persons so challenged by it being Feierstein and Hawkins. It is contended by the appellant that, in these circumstances, the court committed prejudicial error in refusing to al *609 low defendant’s challenge of the two jnrors mentioned for cause. Much of the discussion in the briefs on this point is eliminated by the decision in the case of Denver City Tramway Co. v. Kennedy, 50 Colo., 418. The decision of that case turned upon the construction of the identical act, to-wit, of April 10th, 1905, which was in force at the time of the trial of the case at bar, and upon which the appellant relies to sustain the validity - of its challenge for cause. (Rev. Stats. 1908, section 3690.) Section one of the act of 1905 provides: “That the fact that any person summoned in any way to serve as a juror in any district or county court shall have served as a juror in either of said courts, at any prior term, within one year next preceding, shall he a sufficient excuse for such person from service, and may also he ground for challenge for cause to such individual summoned.” It was held in the Kennedy case, supra, first, that the statute gave the right to challenge for cause any juryman, who had served as a juror at any prior term of the court held within a year next preceding the term at which such challenge was made; and, second, that where such challenge was properly made, hut was overruled by the court, and the challenging party after-wards exhausted his peremptory challenges, using one of them on the disqualified juror, the-action of the court in denying the challenge on the statutory ground was error to the substantial prejudice of the party who made the challenge.
If, then, the present record shows a case within the opinion of the supreme court cited, the plain duty of this court is to give effect to that opinion. If the bill of exceptions had set forth, in substance, *610 the answers given by the challenged jurors in the particular mentioned, our task would be easier. Counsel who made the challenge, or attempted to do so, at first stated: “I desire to say that there are certain jurors who have served within a year, whom we desire to challenge under the statute.” Subsequently, and at practically the same stage of tlie proceedings, counsel made the further statements above set forth.
Of course, the fact that the answers given by the jurymen had not been taken down by the stenographer was a wholly immaterial circumstance. If counsel desired to have the substance of the answers preserved, as a justification for the claimed right of challenge, the same might and should have been incorporated in the bill of exceptions. The declaration of counsel that he desired the record to show that certain statements of fact had been made by certain jurors, did not, without more, incorporate such statements, as facts, in the record. The remark must be considered as a part of the challenge, intended to call the attention of the court to the evidence upon which it was based, and not as the evidence of the facts relied upon. Nor does the fact that it does not appear that plaintiff’s counsel objected to the statements of 'fact included in the challenge as made alter the case. It does not appear that he was requested, either by the court or by opposite counsel, to admit or deny the latter’s statements, or to give his own version of what the examination of the jurors disclosed. It appears from the bill that plaintiff’s counsel expressed his willingness that defendant’s counsel might make his challenges, and that ■ the court should pass upon *611 them; bnt that does not seem to imply anything more than a willingness that the court should determine the legal questions involved in the challenge upon the latter’s recollection of the facts. Certainly, the plaintiff would have been estopped by her counsel’s attitude from objecting to any adverse ruling of the court, but that cannot avail to support the exception of the appellant, in lieu of the evidence of the facts. It is the recognized rule that a judgment may not be reversed on account of an erroneous ruling or decision, unless it affirmatively appears from the record certified to the appellate court, that some substantial right of the party complaining of the decision was thereby prejudicially affected. Mills’ Ann. Code, section seventy-eight. Defendant’s counsel first stated that there were certain jurors, who had served within a year, and whom, it was desired to challenge under the statute. Without reference to the reason then assigned by the court for refusing to consider the challenge, the grounds asserted, if true, were insufficient as a challenge for cause under the statute, as interpreted by the supreme court. Thereafter the challenge was amplified by naming the jurors, and by the further statement of counsel’s version of the answers given by them on their examination as to their qualifications. With respect to the latter statement, it could easily be conceded that, if the examination of one of the jurors showed that he had served the last term of court in the same division, it would have sufficiently appeared that he had served at a preceding term of the court within a year. The court is divided in opinion on the proposition as to whether or not service in the county court within a year *612 would afford sufficient ground for challenge for cause in the district court. The point is not decided, because its decision is held to be unnecessary to a determination of any question presented by this record for reasons herein stated.
It is contended that, in view of the ruling of the trial court, the manner of making the challenge was of no consequence, and in fact that it was not-necessary for the defendant to make any particular challenge, because the court ruled that, in view of the practice as he declared it to be, the time had passed when any challenge might be made for cause. It is further argued that, conceding that the order and method of making challenges for cause is largely a matter within the discretion of the trial court, nevertheless the enforcement of the supposed rule of practice against the defendant, in the circumstances of this case, operated to wholly and unreasonably deprive the defendant of a right of challenge given by the statute, and was, in this instance, an. abuse of discretion. On the other hand, the supposed rule of practice is defended principally on the grounds of convenience and expediency. The court, it is said, must try all challenges for cause upon the facts elicited by.the examination of the jurors and otherwise, and- oftentimes he must determine nice and doubtful questions of fact and law, which require a distinct recollection of the evidential facts; and it is not to be tolerated that counsel should reserve challenges for cause until after the conclusion of the examination of the twenty men in the box, which would require the court to keep in mind all of the evidence touching the qualifications of each particular juror, even if no improper motive *613 might be ascribed to counsel for withholding s.uch challenge. The rule of practice, it is said, does not apply to a case in which counsel may desire to reexamine jurymen, for the purpose of bringing out some new facts bearing upon their qualifications, or of more fully inquiring into matters touched upon on their examination.
There is no statute controlling the question of practice involved; and no precedents have been'cited bearing directly upon it, further than to illustrate the conceded rule that, in the absence of statute regulation, the method and order of procedure with respect to empaneling the jury, ascertaining the qualifications of the veniremen, and trying and disposing of challenges for cause, are matters commonly left to the sound discretion of the trial judges. Such discretion, however, is not an arbitrary one, by which a party may be unreasonably and unwittingly deprived of a substantial right not within the court’s discretion to deny. It is here claimed that defendant’s counsel was compelled to exhaust two peremptory challenges in ridding the panel uf jurors, who had been properly challenged for statutory cause. In the consideration of this objection, we are confronted with the difficulty that counsel’s contention is not borne out by the record. As we understand the matter, the court did not prevent counsel for defendant from making the challenge, or stating the grounds thereof, but evidently permitted them to make such record as they desired with respect to the matter, although adhering to the ruling that a juror must have been challenged for cause at the time- when the ground for such challenges appeared from his examination. So far as *614 the court’s ruling required the challenge of each juror separately, it seems to have been clearly within the intention of the code provisions relating to the subject. “The plaintiff first, and afterwards the defendant, shall complete his challenge(s) for cause.” Mills’ Ann. Code, section 184. “After each challenge sustained for cause, the vacancy shall be filled before further challenges are made, and any new juror introduced may be challenged for cause,” etc. Id., section 185.
Thus far the discussion has been based on the statements contained in the bill of exceptions. The same question was raised again by the motion for a new trial, in three separate specifications. In support of the motion, there were filed affidavits of appellant’s attorneys, including those who participated in the trial, with respect to the practice prevailing in the district court in exercising the right to challenge jurors for cause, and counter affidavits were filed on the side of the plaintiff. It was stated in the affidavits of the two lawyers who conducted the trial for the defendant, in substance, that after the examination of all the men in the jury box, and before passing the jury for cause, defendant’s counsel challenged certain jurors, not naming them, and that the court overruled the challenges; but neither affidavit undertook to state the substance of what transpired on the examination of the jurors as to their qualifications to serve in that capacity.
It must be said that the existence of a uniform rule of practice, which requires the challenge of any particular juror for cause to be made at the very time when the ground for challenge becomes apparent from his examination, and before passing to the *615 examination of another juror, is doubtful, and the argument in favor of such a rule is not convincing. If the record convinced us that the defendant was deprived of a right of challenge given by statute, as claimed, by the arbitrary application of a doubtful rule of practice, at a time when it was not possible to comply with such rule, it might he difficult to uphold the court’s action as a proper exercise of discretion. But in the condition of this record, and particularly in the absence of any record evidence to show that the persons intended to be challenged were not subject to jury duty under the statute, it is impossible to say that the ruling ought to require the reversal of the judgment.
2. The plaintiff was permitted to introduce in evidence at the trial, over the objections and exceptions of the defendant, sections 1219, 1221 and 1222, of article IY, of the compiled ordinances and charter of the City of Denver, said sections being as follows:
“Section 1219. Grong or hell, when to be rung.
Every street-car or train of street-cars run or operated in the City of Denver shall he provided with at least one gong or bell to be used as a signal or warning of the approach of such car or train, and it shall be the duty of the driver, gripman, motorneer or person controlling the motive power on any street-car when approaching any street crossing, to ring or sound such gong or bell within a distance not exceeding sixty feet from such crossing, and it shall also be the duty of such driver, grip-man, motorneer or person controlling the motive power of any street-car, to sound or ring such gong or bell when ever such person shall have reason to *616 believe that there is danger of such car or train colliding or running against a person, vehicle or any animal or obstruction.
1221. Must not pass on intersecting streets.
Sec. 1221. Whenever any street-car or any train of cars, running upon any line or lines now used or that may hereafter be used, shall approach each other from opposite directions, it shall be unlawful for the person controlling said cars or trains or either of them, or controlling the motive power on said cars or either of them, to permit said cars or trains so approaching each other to pass upon any intersecting. street, but the car or train furthest from said intersecting street shall come to a full stop at such point and in such manner as not to impede or obstruct travel on such intersecting street, and so to remain until the approaching car or train shall have entirely passed.
1222. Penalty.
Sec. 1222. Any driver, gripman, motorneer or person, controlling the motive power of any streetcar or train guilty of a violation of any provision of this article shall, upon conviction thereof, be fined in a sum not less than five > dollars nor more than $200.”
.Objection was made to these ordinance provisions on the following grounds: (1) that section 1219 was a penal enactment, and could not give rise to a civil cause of action between the plaintiff and the defendant; and (2) that there was no evidence to show that the bell on the car was not sounded within a distance of sixty feet. To section 1221 the same objections were made as to section 1219, and to each section the further objection *617 was made that the accident occurred after the adoption of the new charter of the City and County of Denver, under the amendment to the constitution, known as article XX, and that that charter contains a provision — using the words of the objection —“to the effect that no ordinance shall be enacted by reference to its title merely, but shall be enacted in full, shall be set out in full, and that at the time of the happening of this accident, which was after the adoption of this charter, there had been no action on the part of the city council adopting the ordinance in compliance with the charter of the City and County of Denver, but the same was adopted, if adopted at all, by a general enactment, contrary to the charter provisions.”
As to the method of proving the ordinance provisions, or the authenticity of the hook containing them produced at the trial, no objection appears to have been made at the time. Moreover, the concession made in one of the briefs filed on behalf of the appellant is conclusive that reliance was not and is not placed on any failure to properly authenticate the hook, from which the parts of the ordinance admitted were read, as being a compilation of the ordinances of the city of Denver published by authority of the city. With this concession, the objection to the admission of the sections quoted is wholly without merit.
While the matter does not seem to he of vital importance in the determination of the question of the admissibility of the sections of the compiled ordinances, we have no hesitation in expressing the view that all of the courts of the state will take judicial notice of the existence and contents of the *618 charter of the City and County of Denver, which was adopted on March 29th, 1904, to the same extent that the former legislative charter of the city of Denver was judicially noticed. Section five of article IX of the charter of the city of Denver of 1893 provided (session laws of 1893, page 232): “All ordinances of the City of Denver, or of any other town or city hereafter incorporated with, or annexed to the City of Denver, may be proved by a copy thereof, certified by the city clerk, under the seal of the city; or when printed in book or pamphlet form, and purporting to be published by authority of such town or city, the same shall be received in evidence in all courts or other places, without further proof.”
Section 338 of the charter of the City and County of Denver, adopted under the amendment to the constitution, known as article XX, is the same in substance as the above quoted section five of article IX of the former city charter.
It was provided by section four of article XX of the constitution that: “The charter and ordinances of the City of Denver as the same shall exist when this amendment takes effect, shall, for the time being only, and as far as applicable, be the charter and ordinances of the City and County of Denver; ’ ’ and after providing for the framing and adoption of a new charter by the people of the City and County of Denver, the same section further provided: “The charter shall make proper provision for continuing, amending or repealing the ordinances of the City and County of Denver.” And in section 348 of the charter, which was adopted pursuant to the authority of article XX, the following is found:
*619 “Except as otherwise herein provided, all ordinances in force at the time of the adoption of this charter, so far as not inconsistent herewith, shall remain in full force and effect until they expire by their own limitation, or until amended or repealed by the council.”
It is not claimed that the ordinance provisions under discussion are within any of the exceptions found in the charter, or are inconsistent therewith. Therefore, it seems that the evidence was admissible, whether under the old charter of 1893 and the provisions of section four of article XX of the constitution, or under the provisions of the charter of the City and County of Denver, which was adopted by popular vote under the authority of that article.
Counsel insist “that section 338 of the charter of the City and County of Denver, which charter was not adopted until March 29th, 1904, could not operate retrospectively.” Conceding this to be true, nevertheless the admission of the ordinances in question, enacted and published by authority prior to the adoption of the new charter, in no sense gave retrospective effect either to the ordinances or the charter. The objection to the introduction of the ordinance provisions, on the ground that the person in control of the ear, who was guilty of a violation of any such provision, was subject to a fine therefor, has not been argued in this court: and was clearly untenable, under the rulings of our courts. D. & R. G. R. R. Co. v. Ryan, 17 Colo., 98; Griffith v. Denver Tramway Co., 14 Colo. App., 504; Denver City Tramway Co. v. Martin, 44 Colo., 324; Denver Omnibus & Cab Co. v. Mills, decided at the present term of this court.
*620 3. It is assigned as error that the court refused to instruct the jury to return a verdict for the defendant, upon the latter’s request. Since the argument in support of that assignment proceeds upon the theory of contributory negligence on the part of appellee’s husband, it will be considered in connection with the further assignment based on the exception to instruction numbered six, given by the court to the jury, concerning the burden of proof upon the defense alleged in defendant’s answer that the injuries sustained by the deceased, which caused his death, were due to his own fault and negligence, which contributed to the accident and injuries received by him. The last mentioned instruction was as follows:
“Instruction No. 6: The court instructs the jury that the deceased is presumed to have exercised due and proper care at the time of the accident, and the burden of proof that he was negligent is upon the defendant, unless such negligence appears in the evidence adduced on behalf of the' plaintiff. ’ ’
Objection was made to that instruction upon the ground that the jury might reasonably infer therefrom that there was a presumption in favor of the plaintiff, which the defendant must overcome, and that there was no presumption of due care under the circumstances of the case, but that fact must be determined from the evidence.
The consideration of these questions .requires examination of the evidence. The accident, which caused the death of appellee’s husband, referred to hereafter as the deceased, occurred at the crossing of Lawrence and Tenth- streets, in the City and *621 County of Denver, shortly before one o ’clock, on the twenty-eighth day of June, 1905. ' The streets cross at right angles, and it will be assumed for convenience of statement that Tenth street runs in a general north and south, and Lawrence street in a general east and west, direction. Appellant’s double-track electric street railway upon Lawrence street crossed Tenth, and-extended along Lawrence street for some blocks east and west of Tenth. Deceased was riding a bicycle along the westerly side of Tenth street, in the portion of the street used by vehicles, going north, and evidently intending to cross Lawrence street. There was testimony to the effect that, when he reached the street intersection, an eastbound electric car was crossing Tenth street on the southerly track, that is, the track nearest to the deceased; and that, as the eastbound car was passing over the street intersection, appellee rode immediately past the rear, or west end of that car, and before reaching the rail of the north track, he was struck by a car going west on the latter track. His wheel was knocked from under him, and he was thrown against the westbound car and so severely injured that he died about three hours afterwards. Four witnesses for the plaintiff, who saw the occurrence, testified that the two cars passed in the street intersection, and that the deceased was struck instantaneously after passing the rear end of the eastbound car. The evidence showed that the westbound car did not stop at the Tenth street crossing, but proceeded across that street at high speed. Several witnesses ’ testified that the westbound car crossed the street at a speed, which was variously described as “a very high rate of speed,” “a re *622 markably high rate of speed,” “faster than cars generally go,” “faster than usual,” “very fast,” “faster than they usually run — I never saw a car go so fast” — that it passed the eastbound car about the center of Tenth street,, and that, after the plaintiff’s husband was struck, it did not come to a stop until within ten or fifteen feet of the alley west of Tenth street. One of plaintiff’s witnesses testified to his belief that the deceased’s wheel struck the fender of the westbound car, which projected a few' inches beyond the rail, while others could not tell with what part of the car he came in contact. Plaintiff’s witness, Mr. Smith, testified that he was standing in front of his gate, on Tenth street, about two hundred and twenty feet north of Lawrence, when he observed the deceased riding his bicycle on the westerly side of Tenth street, near the Lawrence street crossing, and he also saw the eastbound car, the rear end of which was then near the middle of the street; that deceased “slacked up a little,” and rode around the rear end of the eastbound car, turning, as he did so, diagonally in an easterly direction —“ a kind of slanting cut” — when he was instantly struck by the westbound car. The witness said: “I think the fender hit him, threw his wheel from under him, and threw him up against the corner of the car.” This witness further testified, on cross-examination : “ Q. How rapidly was he going, was he going faster after he got behind the car than he was before he started to go behind th"e car? A. No, sir. Q. But he did slack up a little to let the car go by? A. Yes, sir. Q-. After the car passed, did he go ahead to get around? A. Yes. Q. What position was he on the wheel? A. Why, I think *623 lie was sitting pretty straight. His handles was np, I think. Q. What position was his head? A. Why, about like a man generally rides a wheel. Q. Was his head down, running this way? A. I don’t think it was quite down. Q. I will ask you whether or not you did not sign the' statement with reference to his position on the wheel, ‘He was sitting on his wheel with his head down, as if looking down.’ Did you make that statement? A. I did. Q. That is true, is it? A. Yes, sir.” On re-examination this witness testified that deceased’s position on the wheel was “just about the way most of the men ride. Would not swear whether he was looking down or looking up like that. Q. You could not tell? A. No, sir, his back was to me.” No other witness for the plaintiff saw deceased at the instant when the collision occurred, or until the westbound car had cleared the crossing, when he was seen lying in the street, his body being a little west of the center of Tenth street, partly in the space between the street car tracks. ■
One witness testified that no bell was rung on either car, while the witness Smith testified that he heard a bell, but could not tell on which car it was, by reason of the distance. Another witness, who was a passenger on the westbound car, did not remember hearing the bell or gong. The only other witness who testified with respect to the ringing of the bell or gong was the motorman of the westbound car.
Five witnesses for the defendant testified that the two cars passed east of the Tenth street crossing, including the motormen on either car, another *624 motorman, who was riding on the eastbound car, and two passengers on the westbound car.
The motorman in charge of the westbound car testified that, as he came towards Tenth street, he turned off the current, took up the slack, and sounded his gong; and that he passed the eastbound car just east of the Tenth street crossing. He said that, just as he passed the eastbound car, he got a view of both streets for an instant, and he saw a man on a wheel, the front of the wheel being on the south track; that the car was not far away from the man on the wheel, who appeared to be coming, down Tenth street, riding very fast, with his head down, bending over the wheel; that witness rang the gong, threw on the reverse, and tried to stop, but the man struck, as he thought, near the corner of the car— probably the rear part of the fender. He further stated that he stopped the car at about the usual ■stopping place on the west side of Tenth street, but in his excitement started the car again, and afterwards brought it to a stop. “Q. As the man got toward the south track, why could you not see him; wasn’t anything to prevent you, was there? A. There was the other car; I could not look through the other car. ’ ’ He said that he did everything in his power to stop the car after he saw the man on the wheel.
Another witness for the defendant, a passenger on the westbound car, testified that he saw the deceased, when he came in contact with the car. He said that after the eastbound car had passed, he ¿aw a man coming towards the westbound car on a wheel; that the man had his head down, and ran into the car at an angle of about forty-five degrees towards *625 the direction in which the car was moving; that he first noticed the man when he was about fifteen feet from the south track, and that he was coming real fast, directly down Tenth street, and struck the car about even with the steps of the vestibule; that all occurred very suddenly, and the car was stopped in about thirty feet, but was not started again while he was on the car. He noticed nothing unusual in the speed of the car, which he said was on Tenth street, when he first saw the man on the wheel. He further stated: “When the cars passed, I looked up, and the man, I think, was even with the front of the car, on the west side of Tenth street — about the center.” Several witnesses contradicted the motorman’s statement that he started the car after he first stopped west of Tenth street.
One embarrassment in ascertaining the exact meaning of the answers of some of .the witnesses arises from the fact that there was evidently a plat of some kind, and a photograph, to which the attention of the witnesses was called while they were examined, but which were not incorporated into the record; and some of the questions and answers were made with reference to the plat or photograph, in such a way as to make the answers difficult of comprehension.
There was little effort made on the part of the defendant to contradict the testimony of plaintiff’s witnesses that the westbound car was moving at excessive speed.
It was testified by one of the motormen that the eastbound car had “the right of way,” which was explained as meaning that, whenever necessary to avoid passing in a street intersection, it was the *626 duty of the motorman of a westbound car to stop his car before reaching the crossing.
It is evident that the three witnesses, who claimed to have seen the deceased immediately before and at the very time when he came in contact with the car, materially differed in their respective versions of the occurrence, and that the testimony was essentially conflicting with respect to the vital questions involved. The jury may well have found, from all of the evidence, that the westbound car passed the other car in the street intersection, at a very high rate of speed, and that the deceased’s wheel came in contact with the portion of the fender, which projected over the rail between the tracks, in'stantly after he passed the south track in the rear of the eastbound car, without having any warning of the approach of the car on the farther track; and further that, if the latter car had waited to pass the other east of the crossing, the deceased would have had ample time to cross the north track in safety.
The rule is elementary that in the consideration of such questions, the appellate court is bound to assume that the jury determined every disputed matter of fact in evidence, as well as every honest inference of fact adducible from the evidence, in favor of the plaintiff. It is well established by the decisions of our courts that contributory negligence is an affirmative defense, and the burden of proving it rests upon the defendant, although it may be shown by the testimony of plaintiff’s witnesses. D. & R. G. R. R. Co. v. Ryan, 17 Colo., 98; Moffat v. Tenney, 17 Colo., 189; Platte etc. Co. v. Dowell, 17 Colo., 376; Nichols v. C. B. & Q. R. R. Co., 44 Colo., *627 501; Tramway Co. v. Wright, 47 Colo., 366; Those eases, besides many others, illustrate the further doctrine of our courts, that, before the court will grant a non-suit of direct a verdict in favor of a defendant, on the ground of the contributory negligence of the person whose death was caused by the defendant’s negligence, it must appear that the evidence, in the most favorable light in which it may be reasonably considered in behalf of the plaintiff, shows that the deceased was guilty of negligence which contributed to cause the injury as alleged and without which such injury would not have happened.
In the present case, the question of the contributory negligence of the deceased was clearly one for the jury, on all the evidence, upon the principles frequently declared by our courts. In this connection, it is proper to remark that it was the duty of both the court and the jury, in resolving the issue of contributory negligence, to take into consideration, with other facts and circumstances in evidence, the testimony with respect to the violation of the street-crossing ordinance as well as the speed of the car. It is one thing to say that the plaintiff could not recover, if the negligence of the deceased contributed to the cause of his death, notwithstanding that it may have occurred in consequence of the concurrent negligence of defendant’s servants; it is quite a different theory that the negligent acts of the defendant’s servants may not be regarded, in estimating the acts and conduct of the deceased to determine whether there was contributory negligence on his part. The distinction indicated seems to be quite clearly drawn by the opinion of the su *628 preme court in Nichols v. C. B. & Q. R. R. Co., supra, some portions of which, will be next quoted:
“So that, in determining the degree of care which a pedestrian about to cross a track at a pub: lie crossing in a city must exercise, the general rule is, that the pedestrian who does not know of the negligence of a railroad company in running its train at an unlawful rate of speed, and in failing to give the required signals of its approach, and such want of knowledge is not the result of his failure to exercise a reasonable degree of care, he is only required to exercise that degree of care which ordinarily prudent persons will exercise when the railway company is also exercising the cars which the law imposes upon it, in the operation of its trains at street intersections.”
And again: “Plaintiff had observed a clear track for 685 feet. The engine approaching him was giving no signals. The crossing he was about to make was in the city where the speed of an engine was limited to ten miles an hour. Had the ordinance in that respect been obeyed, plaintiff would have had ample time between the time he looked and the time the engine struck him to have crossed the track in safety. All these matters, it appears to us, were proper to consider in determining whether or not plaintiff was guilty of contributory negligence, and as they are of a character that different intelligent and unbiased minds might honestly reach different conclusions therefrom, on that question the court erred in holding as a matter of law on the record before us that the plaintiff was guilty of contributory negligence which barred his right of action.” (44 Colo., pp. 510-11.)
*629 “Sucli a condition does not relieve the traveler from the exercise of all care, but is a factor to consider in determining whether or not he exercised that degree of care which, under the circumstances, he should have exercised. He has the right to assume, when he himself has exercised due care, that in handling its- cars the railroad company will act with appropriate care; that the usual signals of the approach of a train will be seasonably given, and that those operating a train will be attentive and vigilant to the extent the law requires. The law does not hold it imprudent in any one to act upon the assumption that another, in his conduct, will act in accordance with the rights and duties of both. Such consequences of the act of the defendant in having its locomotive which collided with plaintiff concealed behind the train backing on to the Longmont switch, and in failing to give warning of its approach where, shortly before the plaintiff attempted to cross the track, he had looked to the south and observed it was clear for 685 feet, is an important question of fact to consider in determining the degree of care he exercised, as an aid in ascertaining whether or not such act and omission under the circumstances tended to throw him off his guard and lull him into a false sense of security.”
See also Tramway Co. v. Martin, 44 Colo., 324.
And so, in the present case, the jury had the right, in considering whether the deceased was in the exercise of proper care, as defined in the instructions of the court, at the time of the accident, to consider whether an ordinarily prudent man might, in like circumstances, have been lulled into a sense of security by the assumption that the east *630 bound car did not conceal from view a car crossing the street in the opposite direction, in violation both of the municipal law and the rule of the railway company based thereon, both intended to secure the safety of persons in the lawful use of the street, using’ ordinary care to protect themselves.
4. There remains for consideration the alleged error in giving instruction numbered six quoted above. It may be said to be established upon the highest authority that the law will recognize, in proper circumstances, a presumption of care, of some weight and probative value, derived from the natural instinct of mankind to prolong life, and avoid pain, suffering and maiming of the body.
In Baltimore & Pot. R. R. Co. v. Landrigan, 191 U. S., 461, the court said:
“There was no error in instructing the jury that,, in the absence of evidence to the contrary, there was a presumption that the deceased stopped, looked, and listened. The law was so declared in Texas & P. R. Co. v. Gentry, 163 U. S., 353, 366. The case was a natural extension of prior cases. The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation — none that so insistently urges to care against- injury. It has its motives to exercise in the fear of pain, maiming, and death. There are few presumptions based on human feelings .or experience that have surer foundation than that expressed in the instruction objected to. But, notwithstanding the incentives to the contrary, men are sometimes inattentive, careless, or reckless of danger. These the law does not excuse nor does it distinguish between the degrees of negligence.”
*631 The general principle is stated in'the headnotes to Wabash R. R. Co. v. DeTar, 141 Fed., 932, by Judge (Mr. Justice) Van Devanter, as follows:
“(1) Because the natural instinct of 'self-preservation generally prompts men to acts of care and caution when approaching or in the presence of danger, there is, in the absence of credible evidence of the actual fact in any instance, a presumption of the exercise of due care and caution; but, like other presumptions of fact arising from the ordinary or usual conduct of men, rather than from what is invariable or universal, this presumption is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it, which may be shown by the testimony of eyewitnesses- to his movements, or by evidence of the physical surroundings and other conditions at the time.
(2) The presumption of the exercise of due care and caution on the part of one approaching a place of danger is essentially inferior in probative force and weight to credible evidence, either direct or circumstantial, explanatory of the actual occurrence, and, in those courts where the presumption underlies the rule that the burden of proving contributory negligence rests upon the defendant and must be maintained by a fair preponderance of the evidence, its force and influence are so largely embodied in the enforcement of that rule that it has little independent application, save as it rests upon a general, but not invariable, rule of human experience which may and should be considered in determining the credibility of evidence and the weight *632 to be given to it when these matters are not otherwisé entirely clear.”
The opinion in the last cited case reviews many cases bearing upon the application of the presumption of care and caution, from the point of view of different courts and judges, to the conditions of individual cases, and modifies some expressions of the same court found in the earlier opinion in Nor. Pac. R. Co. v. Spike, 121 Fed. 44. The learned judge writing the opinion in the DeTar case, said in part (page 935):
“So, also, in the cases City of Naples and Northern Pacific Ry. Co. v. Spike, supra, it was held by this court that the presumption arising from the natural instinct of self-preservation stands in the place of positive proof fin the absence of countervailing evidence.’ As the presumption reflects only the ordinary or usual conduct of men, and is at utter variance with what they sometimes do, it is not entitled to probative force or weight as affirmative or positive evidence, but only to the force or effect of a rebuttable inference of fact which must necessarily yield to credible evidence of the actual occurrence. Nor is it essential that such evidence shall come from eyewitnesses to the movements of the person injured, because the presumption must equally yield to evidence which shows that the physical surroundings were such that the injury would not have occurred had he been in the exercise of reasonable care.”
The conclusion reached by the court in the DeTar case was that the trial court erred in instructing the jury, in that, in addition to telling them that the burden of establishing contributory negligence *633 on the part of the deceased was on the defendant and must be maintained by a fair preponderance of the evidence, it attributed to the presumption of the exercise of due care the probative force and vveight of affirmative evidence, notwithstanding there was substantial evidence tending to explain the actual occurrence, and also went to the extreme of indicating that the presumption was to be regarded as if it were testimony coming from the deceased; and that “there was also error in the general terms in which it was left to the jury to say whether the presumption could be overcome by evidence of the physical surroundings and other conditions at the time. That it can be so overcome was a matter of law, to be stated by the court, and not matter of fact, to be determined by the jury.”
Among the cases considered in the last mentioned opinion, was that of Phila. etc. Co. v. Stebbing, 62 Md. 504, wherein it was observed by Chief Justice Alvey:
“It is certainly true, the motive of self-preservation is a principle of our common nature, and it is but rationally presumed, in the absence of evidence to the contrary, that parties act under its promptings in view of impending danger, and in such cases as the present, there is a counter-presumption, when the proof does not show to the contrary, and that is, that every person charged with a duty involving the safety of himself or others will perform that duty; so that, in fact, it is not often the case that these mere presumptions afford much assistance in arriving at correct or just conclusions. They ought not to be indulged to the exclusion of direct evidence to the contrary; and it *634 is only where there is no reliable proof to the contrary, or there is rational doubt upon the evidence as to the acts or conduct of the parties that such presumptions can properly be invoked. The jury ought not to be instructed in such terms as would justify them in acting’ on the mere presumption of the absence of fault of either party, in disregard of the truth of the case, where there are facts and circumstances to be considered by them.”
Kansas City-Leavenworth R. Co. v. Gallagher, 68 Kas. 424, is an interesting case upon the subject under discussion. That was also an action to recover damages by reason of the death of a person killed by an electric street car in a street-crossing .accident. There was some testimony bearing upon the question of the exercise of proper care by the deceased before and at the time when he was struck. The proof did not show that he did or did not look for an approaching car, or that he did or did not see or hear the one which struck him. The court said:
“The defendant company argues the case as if the deceased man either looked and listened for an approaching car or did not do so; that he was negligent if he failed to take such precaution for his own welfare; that he must be held to have noted the proximity of the car, if he did look and listen, and that a reasonably prudent man, after looking and listening, would have avoided a collision. * * * But a jury may infer ordinary care and diligence on the part of an injured person from the love of life, the instinct of self-preservation, and the known disposition of men to avoid injury.- — DeWald v. K. C. etc. Co., 44 Kan. 586. And in the absence of evi *635 dence to the contrary, it will he presumed that a person about to cross a railroad track both looked and listened before venturing to do so. — C. R. I. & P. Ry. Co. v. Hinds, 56 Kan. 758.” .
In Pennsylvania R. Co. v. Weber, 76 Pa. St. 154, at page 168, it was said:
“The common law presiunption is, that everyone does his duty until the contrary is proved; and, in the absence of'all evidence on the subject, the presumption is,, that the decedent observed the precautions which the law prescribes before he attempted to cross defendant’s road. * * * If the uncontradicted evidence in the case shows that the decedent did not stop before driving on the track, then he omitted a plain and positive duty, and the court has declared its omission negligence, as a matter of law. But if there was no direct or positive evidence showing that he did not stop before driving on the track, then the learned judge was clearly right in refusing to withdraw the case from the jury, and in saying, as he did, ‘We cannot affirm this point, but say again, that the first presumption of law is, that he did stop, look and listen. But this presumption will give away to the actual truth, that he did not do so, and we say again, that if the evidence satisfies you that had Weber stopped, looked and listened, he would not have been injured, then he was guilty of negligence, and you should find for the defense, even should you find that the engineer gave no warning of the approach of the train.”
The reference to the instruction in the Pennsylvania case is not to be taken as an affirmation that the law of this state imposes on the deceased any absolute duty to “stop, look and listen,” before *636 attempting to cross the street railway track at the crossing.' Davidson v. Tramway Co., 4 Colo. App. 283; Philbin v. Same, 36 Colo. 331, 335, 337.
In Missouri, where practically the same rules prevail concerning the burden of proving contributory negligence as are recognized in this state, the presumption under discussion has often been approved, in cases analagous to the one at bar. See Riska v. Union D. R. Co., 180 Mo. 168, and cases cited in the opinion. In the recent case of Eckhard v. St. Louis Transit Co., 190 Mo., 593, this instruction was given to the jury:
“The court instructs the jury that by ordinary care is meant such care as an ordinarily prudent man would use under like circumstances. And the court further instructs you that the law presumes that Eckhard was using ordinary care at the time of the accident, and the burden of proving the want of such care rests upon the defendant. ’ ’
The judgment for the plaintiff was affirmed by the supreme court. The report of the case shows that testimony was given by eye-witnesses of the accident.
If the presumption is to be conceded any utility whatever, where the defendant has the burden of proof, it seems that it might be resorted to in a case like the one before us, wherein the facts of the accident were left in grave doubt by the testimony, for the purpose of assisting the jury in reaching a just conclusion. The instruction complained of was not misleading, unless the jury were thereby left to infer that they might disregard the evidence, or return a verdict in opposition to it, or that the instruction contained the law applicable to the defense of con- *637 tributary negligence in the circumstances of the case. It may be granted that, if the instruction stood alone, it might be subject to some of the objections urged against it. But the jury were further fully instructed, at the request of the defendant, with reference to that matter. Thus, by instruction numbered thirteen, the jury were charged that, if they believed from a preponderance of the evidence in the case that the motorman in charge of defendant’s car was guilty of any or all of the acts of negligence charged against him, and if they further believed from a preponderance of the evidence that deceased failed to exercise that degree of care and caution which the ordinary, careful and prudent man would have used under the same or similar circumstances, and that such failure on his part contributed to the accident and injuries which resulted in his death, and without which the same would not have occurred, then the accident and subsequent death would be due to the concurrent and contemporaneous negligence of those in charge of defendant’s car and the deceased, and it would be the duty of the jury to return a verdict in favor of the defendant. And the following further instructions were given at defendant’s request:
“Instruction No. 17. The court instructs the jury that if you believe from a preponderance of the evidence in this case that at the time this accident occurred there were two cars of the defendant com-pany moving in opposite directions at the intersecr tion of 10th street and Lawrence, and that the deceased proceeding along 10th street on his .bicycle, in the exercise of reasonable care saw or could have seen said two cars thus crossing at said intersection, *638 and the deceased, notwithstanding said passing of said cars, rode immediately from behind and in the rear of one of said cars, and was almost instantly struck and almost instantly came in contact with the car approaching on the other track, then, under such circumstances, you should find the plaintiff guilty of contributory negligence, and your verdict must be for the defendant.”. “Instruction No. 18. The court instructs the jury that if you believe from a preponderance of the evidence that the east bound car had fully cleared the intersection of 10th street previous to the time the west bound car entered upon the same, and attempted to cross over said street, and if you further believe from a preponderance of the evidence that the deceased was attempting to cross the defendant’s track, under such circumstances, it became his duty to look and listen and endeavor to learn of the approach of the west bound car and if you further believe that he failed to look and listen, and that such failure contributed in any degree to the accident and that without such failure the accident and his subsequent death would not have happened, your verdict must be for the defendant.” “Instruction No. 19. The court instructs the jury that if you believe from a preponderance of the evidence in this case that the accident and subsequent death of the husband of the plaintiff were the result of the mutual fault of the servants in charge of defendant’s car and the deceased, or that the same were the result of an unavoidable accident, then, under such circumstances, your verdict must be for the defendant, for the law will neither cast all the consequences upon the defendant, nor will it attempt an apportionment thereof.”
*639 Instruction numbered seventeen, upon the hypothesis that the two cars passed in the street intersection, was more favorable to the defendant than the evidence warranted, and there was certainly nothing in the other instructions of which the appellant might complain. Those instructions are set forth, not because they are approved, in toto, as an accurate statement of the law as applied to the evidence, but to show that there is no room for the objection on the part of the appellant that the jury were misled to its prejudice by the language of instruction numbered six, which contained no incorrect statement of law, so far as it went, but was at most subject to the criticism that, from its generality, the jury might have supposed that they were at liberty to disregard the evidence and base their verdict upon the presumption of care and caution. Any such impression must have been removed by the other instructions noticed. The jury were properly advised that the instructions must be considered by them as a whole. Warford v. People, 43 Colo. 107; Idaho etc. Co. v. Colo. I. W. Co., 49 Id. 66; Denver etc. Ry. Co. v. Howe, Ibid. 256. “An instruction stating the law improperly is seldom remedied-by another instruction announcing the law correctly. But when an instruction states the law correctly so far as it goes, being merely insufficient, ambiguous or uncertain, the defect may be cured by other instructions embraced in the charge.” Stratton v. Ellison, 42 Colo. 498, 516. We find no error prejudicial to the appellant in the instructions respecting the contributory negligence of the deceased.
5. Other supposed errors are assigned upon the instructions given to the jury, which have not *640 'been strongly pressed in argument, and none of which, appears to be meritorious. Considering the instructions, eight of which were given in words as requested on behalf of the defendant, as a whole, it is not apparent that there was any substantial error .committed to its prejudice in instructing the jury. The evidence was sufficient to sustain the verdict rendered, and no error has been found in the record to justify the reversal of the judgment entered in accordance therewith. The judgment is therefore affirmed.
Decided March 11, A. D. 1912.
Rehearing denied May 13, 1912.

Affirmed.