No. 14,814.

SHIMMEL *v.* THE PEOPLE.
(121 P. [2d] 491)

Decided January 12, 1942.

Mr. Robert L. McDougal, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Gerald E. McAuliffe, Assistant, Mr. John A. Carroll, Mr. William E. Doyle, Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Young delivered the opinion of the court.

Funcheon, Williams and plaintiff in error Shimmel were convicted and sentenced to terms in the penitentiary under an information charging in separate counts: Conspiracy to steal the records of the Civil Service Commission of the City and County of Denver; the larceny of records of the Civil Service Commission; conspiracy to unlawfully and feloniously withdraw records of the Civil Service Commission; feloniously withdrawing records of the Civil Service Commission; and, feloni-

ously avoiding records of the Civil Service Commission. The sentences imposed on each defendant run concurrently. Another count in which defendants were charged with stealing the records of the Civil Service Commission was withdrawn from the jury because the trial court held it was not supported by the evidence.

The informations in the case were based upon the following statute: "If any judge, justice of the peace, sheriff, coroner, clerk, recorder, or other public officer, or any person whatsoever, shall *steal,* embezzle, alter, corrupt, *withdraw,* falsify, or *avoid,* any record, process, charter, gift, grant, conveyance, bond or contract, or shall knowingly and wilfully take off, discharge or conceal any issue, forfeited recognizance or other forfeiture, or shall forge, deface or falsify any document or instrument recorded, or any registry, acknowledgement or certificate, or shall alter, deface, or falsify any minute, document, book or proceeding whatever, of or belonging to any public office within this state, the person so offending and being thereof duly convicted shall be punished by confinement in the penitentiary for a term not less than one year nor more than seven years." '35 C.S.A., c. 48, §151.

The salient facts of the situation out of which the prosecution arose, are substantially these: Shimmel, a bread salesman, had a customer, one Darrel Dever, to whom he regularly delivered bread. Shimmel had taken several civil service examinations for the position of police officer in the Denver department, and at a later time, before the information was filed against him, was appointed a member of the department. Dever was planning to take the next examination given, and was desirous of making the necessary preparations to pass it. One Funcheon had previously informed Shimmel that he intended to conduct a school designed to prepare applicants for the examination, and had solicited Shimmel to put him in touch with prospects who might be interested in taking his course.

The evidence was conflicting, and some of it, in the nature of conversations with Shimmel's alleged co-conspirators, was objected to as inadmissible, but in view of our disposition of the case on other grounds, we deem it unnecessary to pass upon this objection. We shall assume that the purpose of Funcheon, the moving spirit in the enterprise, Shimmel and Williams, was to procure advance information as to the questions to be propounded in the forthcoming examination, and for a consideration, disseminate it to prospective examinees. Dever paid $250 for the information he received from Funcheon, after being introduced to the latter by Shimmel. Other similar transactions in which the parties engaged were brought out by the evidence from a number of which, including the Dever transaction relied upon, Shimmel received a part of the money. The evidence discloses that the information given forecast the questions to be asked with such accuracy as to negative any possibility of its not having been procured from the prepared questions themselves. The inaccuracies and omissions in the lists provided by Funcheon are such as might easily be made in the process of copying. The questions were prepared by the secretary of the Civil Service Commission, who, assuming the truthfulness of her testimony, kept them in a safe when she was not present in the office or working with them. There is no evidence that any list of questions was physically abstracted and taken away from the office of the commission. Williams, a janitor at the city hall, who was charged jointly in the information with Shimmel and Funcheon, testified that he procured a roll of old discarded questions from a waste paper basket and that he saw other questions on the secretary's desk. These questions he copied and furnished copies thereof to Funcheon. For such services he received a monetary consideration from Funcheon. The fair inference to be drawn from all the testimony, and it admits of no other inference, is, that without physically abstracting any papers from the office, Wil-

liams gained access in some manner to the questions, transcribed them, and for a consideration gave a copy to Funcheon.

To reverse the judgments against him, Shimmel prosecutes a writ of error. He assigns numerous errors, but only one, which is determinative of the case, requires our consideration. It is, as stated by counsel, in substance as follows: The trial court erred in not sustaining defendant's motion to quash the information, because the examination questions involved are not records of, or belonging to, a public office within the intent and meaning of the statute, and not being such, no crime, under the statute, can be predicated on their stealing, withdrawal, or avoidance, or on a conspiracy to steal, withdraw, or avoid them.

The question here presented is one of first impression in this state. Citations of authorities dealing with different fact situations are of little assistance in solving the problem presented.

Webster defines the verb "record" as meaning: "To commit to writing, to printing, to inscription, or the like; to make an official note of; to write, transcribe, or enter in a book or on parchment, for the purpose of preserving authentic evidence of, or on a wax cylinder, rubber disk, etc., for reproduction, as by a phonograph; to register; enroll; as to record the proceedings of a court." He defines the noun "record" as follows: "Act or fact of recording or being recorded; reduction to writing as evidence; also, the writing so made; a register; as, a record of the acts of the Hebrew Kings; a family record. Specif.: a. An official contemporaneous writing by which the acts of some public body, or public officer, are recorded; as, a record of city ordinances. b. An authentic official copy of a document entered in a book, or deposited in the keeping of some officer designated by law. Cf. Conveyance. c. An official contemporaneous memorandum stating the proceedings of a court of justice; a judicial record. The record is indisputable evi-

dence of the facts recorded, and can be amended only by the court itself upon sufficient evidence of actual mistake or omission. d. The official copy of the various legal papers used in a case, together with memoranda of the proceedings of the court. That which is written or transcribed to perpetuate a knowledge of acts or events; also, that on which such record is made, as a monument; a memorial."

■ It will be observed that there is carried through in these definitions the idea of "reduction to writing as evidence." It will be further observed by a reading of the statute that there are no public offices specifically named therein. Clearly, the statute includes records in the office of any judge, justice of the peace, sheriff, coroner, clerk, recorder or any other public office of a similar kind or character. These offices mentioned specifically are all offices of the state or of some political subdivision thereof. The records and documents mentioned specifically are such as are peculiar to the named offices or concerning which some duty or relationship arises by reason of the functions which the officers specifically mentioned exercise by virtue of their offices. We are of the opinion that the words "record * * * of or belonging to any public office," under the well-recognized ejusdem generis rule applicable to the construction of statutes where general words follow a specific enumeration of those of a certain class, mean records of a kind or nature similar to those enumerated. See, *City and County of Denver v. Taylor*, 88 Colo. 89, 292 Pac. 594, in which a large number of cases from this jurisdiction are cited and discussed.

All of the records specifically mentioned in the statute are of a kind and character such that they are or may be in and of themselves "authentic evidence" of rights and the extent thereof. Any of the inhibited actions with respect thereto has the effect of directly, definitely and certainly destroying or changing the evidentiary character of the records or of destroying the right or

changing the extent of the right that may be exercised thereunder.

It is conceded by defendant's counsel that if the examination had been given, the papers graded and an eligibility, or registry list compiled therefrom, that such list would have constituted a record of a public office, so we assume, without determining, that for the purposes of this case, the matter not being controverted, that the office of the Civil Service Commission is such an office as falls within the meaning of the words "or any public office." So assuming, we are clearly of the opinion that after an examination is given, the examination papers with the answers of the applicants constitute records of the Civil Service Commission, because individually they are the authentic evidence of the applicant's proficiency in the subjects covered, and collectively the evidence of his relative standing on the eligibility list which is compiled therefrom. Any of the acts inhibited by the statute, if performed with respect to the completed examination papers or the eligibility list compiled therefrom, would directly destroy the evidentiary character of such papers and list, and, assuming as we do that the office of the Civil Service Commission of the City and County of Denver is within the statute, would constitute a violation under its provisions. The direct effect of such acts, without any intervening cause, would corrupt the list and cause it to reflect falsely the actual situation resulting from the examination and thus thwart the purpose of the civil service provisions of the Denver charter, just as certainly and definitely as though records of the offices specifically mentioned were corrupted in any of the respects mentioned in the statute.

In the case here presented, corruption of the records of the office, and the thwarting of the purpose of the civil service provisions of the charter, are not a proximate result of the acts of the defendants which were charged and proved. To work such corruption it is

necessary that the acts charged against them operate in conjunction with, or be supplemented by, the acts of a prospective applicant who received the questions in advance and by preparation to answer the specific questions, nullified the examination as an open and competitive test of fitness for the position sought. In other words, the acts charged against defendants might all have been committed by them and no injury, public or private, occasioned thereby. To effect any injury to the public it was necessary that after defendants had completed all the acts with which they are charged, another person, an applicant for a position, should be guilty of an act of moral turpitude, namely, the use of the questions to prepare answers in advance, before there would be a resulting injury or corruption of a record, that evidenced any right, public or private.

What we have said thus far relates to the counts of the information charging the withdrawing and avoiding of a record, the word "record" being limited by the information specifically to the examination questions.

With respect to the counts in the information charging conspiracy to steal, withdraw, and avoid records, the word "record" also being limited to the examination questions, it is pertinent to observe that our statute defining conspiracy makes such acts criminal only when the conspiracy is to commit either a common-law crime or an act made criminal by statute. If the examination questions were not records of, or belonging to, a public office, no crime is committed under this particular statute if they are stolen, withdrawn, or avoided, and a conspiracy to steal, withdraw, or to avoid them would not constitute a crime. It is worthy of note also that there is no requirement in any state law that civil service examinations shall be given by the Civil Service Commission of the City and County of Denver, or if given, how they shall be given, or that they shall be open to all, or competitive in character. The requirement that they shall be given is found in article XV of

the charter of the City and County of Denver, of the provisions of which, under the holding in *Denver City Tramway Co. v. Carson,* 21 Colo. App. 604, 123 Pac. 680, we may take judicial notice. Neither is there any provision or requirement of the state law that if examinations are given that either the original papers or any record thereof shall be preserved. There is a requirement in section 230 of the Denver charter that the grades of those examined shall be entered on a register where they shall remain for at least one year, but not more than two years. Assuming, as we do, the point not being in issue, that this registry list constitutes a record within the intent and meaning of the statute, it will be observed that there is no charge in any of the counts of the information of withdrawing or avoiding this particular record, or of conspiracy to steal, withdraw, or avoid it. The registry or eligibility list is not the examination questions, which is all that the defendant is charged with withdrawing and avoiding, or with conspiracy to steal, withdraw, and avoid. Such registry list in and of itself is the authentic evidence of a right under the city charter, and a corruption of it would be a destruction of its evidentiary character, the very purpose and function it is designed by the charter to fulfill. It will be observed, however, that the conspiracy to do the acts charged, and proven to have been done by defendant, was not a conspiracy to do an act from which any damage or thwarting of the public policy of the City and County of Denver, as declared in the civil service provisions of its charter, could result directly. Before any corruption of the registry list or thwarting of the purpose of the civil service provisions of the charter could occur, the act of a prospective applicant must enter as an intervening cause and concur with the acts charged against defendants. It well may be that there is great moral turpitude involved in the transactions charged, just as there is if two or more persons, knowing that a third person has an enemy, shall conspire to place a loaded

gun in his room so that if thereafter he shall be disposed to kill his enemy it will be available for his use in so doing. It would require an extreme and unjustified construction of the law of criminal conspiracy to hold that a charge of conspiracy to make a loaded gun available under such circumstances would be equivalent to a charge of conspiracy to kill and murder. If the conspiracy directly charged was one to kill and murder, it is possible that under the circumstances of a particular case, where the anger of one person against another was presently violent and that fact known to the conspirator, that the placing of a loaded gun where it would be available for immediate use to commit murder would constitute proof or be admissible as evidence of a conspiracy to murder, by using the anger-maddened individual as the means of accomplishing that result. The latter situation is not analogous to the one presented here, because the conspiracy here charged is not to corrupt or avoid a record that will result in nullifying civil service, but to do an act which requires a further act by another person before there is any nullification of the purposes of the civil service provisions of the charter. In the instant case there is no lack of proof of moral turpitude, but that alone is not sufficient to authorize a criminal conviction for a crime unless the act performed, or the object of the conspiracy charged, is a criminal act under the common or statutory law.

We hold, therefore, that in the sense in which the word "record" is used in the statute under which the information is drawn, the unused examination questions are not records of, or belonging to, a public office, and that the acts charged to be criminal upon the assumption that the examination questions are such records do not, in law, constitute crimes under the statute.

Judgments reversed.

Mr. Justice Otto Bock and Mr. Justice Burke dissent.

Mr. Justice Jackson not participating.

Mr. Justice Burke dissenting.

This judgment was affirmed en banc, rehearing granted and the cause reargued orally. Having written the former opinion, now withdrawn, and remaining unconvinced by subsequent proceedings, it would seem some comment is proper, however futile.

It appears clear to me that nothing in the petition, briefs, oral argument, or present opinion, either in reason or precedent, adds a feather's weight to Shimmel's case. In fact the opinion weakens it because it admits as established, essential elements denied by defendant. It admits that "the office of the Civil Service Commission is such an office as falls within the meaning of the words 'or any public office' ". If so, what relevancy has the rule of ejusdem generis? That "reduction to writing as evidence" is the principal identification mark of a record would seem too apparent to require the authority of Mr. Webster to support it. However, that the legislative wrath was confined to those whose acts tended to destroy the *evidentiary* value of the record strikes me as wholly gratuitous and unsupported. The principal purpose of the civil service questions, and their only public value, was to test the qualifications of those examined, hence whoever frustrated that purpose and destroyed that value did thereby "corrupt" and "avoid" the record. The court's opinion declares that "the thwarting of the purpose of the civil service provisions of the charter is not a proximate result of the acts of defendants charged and proved." If the purpose of those provisions is to determine, by written examination, the qualifications of the applicants, and the disclosure to favored applicants, prior to examination, of the very tests to be applied enabled the fool to palm himself off on the city as a sage, even Mr. Webster suggests no subterfuge to escape the applicability of "thwart." Again

we learn from the opinion that "the acts charged against defendants might all have been committed by them and no injury public or private occasioned thereby." What of it? Defendant did not ward the blow from the community and he is not charged with inflicting an injury. He is charged with being a party to a conspiracy to corrupt and avoid certain public records. Assuming the unqualified assertions of the opinion, he did so. That the conspiracy may have failed is immaterial. Those who conspire to murder are guilty though no hair of the head of the intended victim be touched. Again it is said that before any "thwarting of the purpose of the civil service provisions of the charter could occur the act of a prospective applicant must enter as an intervening cause and concur with the acts charged against defendants." In other words, no matter what the conspirators do they are in the clear unless some outsider gets into the game, and conspiracy to murder cannot be established unless the intended victim joins in it. This is a novel contribution to the law of conspiracy.

It furthermore appears from the opinion that certain assumptions and statements of unquestioned fact are limited to the charge of avoiding and disregarded in considering conspiracy to avoid. I think if justified as to the one they were equally justified as to the other.

Finally, after holding that the office is one of those covered by the statute and that *after* the examination the questions plus the answers would constitute "such a record as the statute refers to," the opinion concludes that "the unused examination questions are not records of or belonging to a public office." I am unable to follow this. Perhaps the opinion is its own best refutation.

To sum up, the clearly applicable portion of the statute reads: "If any * * * person whatever, shall * * * corrupt, * * * or avoid, any record * * * of or belonging to any public office within this state, the person so offending * * * shall be punished," etc. This defendant with others is charged with conspiring to corrupt and

avoid a record of the Denver Civil Service Commission by selling the proposed questions for a fireman's examination to applicants therefor. The record discloses that they did those things set forth in the court's opinion, and no reversible error appears unless it appears therefrom. I am unable to escape the conviction that this defendant unquestionably violated an applicable statute, that by a fair and impartial trial he was convicted thereof, and that he has now been shrived by a baptism of words.

MR. JUSTICE BOCK concurs herein.